## McBride *v.* Aetna Life Insurance Company.

### Opinion delivered January 1, 1917.

1.  INDEMNITY INSURANCE—LIABILITY OF THE INSURER.—Under a contract of indemnity insurance, the insurer does not assume liability, but there must be an actual loss sustained by reason of an enforced payment of the judgment liability of the insured before the obligation of the insurer matures; this is the distinction between indemnity and ordinary liability insurance.

2.  INDEMNITY INSURANCE—NATURE OF LIABILITY.—On a policy of indemnity insurance, the insurer only indemnifies the assured against *actual loss.*

3.  INDEMNITY INSURANCE—ASSIGNMENT.—A policy of indemnity insurance contained a clause restricting the assignment thereof, but *held,* where the liability was undisputed, that the insurer could not escape where both the assignee and assignor were joined as parties plaintiff.

4.  INDEMNITY INSURANCE—PAYMENT.—A policy of indemnity insurance provided that no action should lie except for loss or expense "actually sustained and paid in money." *Held,* a recovery could be had under the policy, where a payment was made by the sale of the assured's property.

5.  INDEMNITY INSURANCE—LOSS—INTEREST.—In an action against an insurance company to recover for an actual loss sustained, interest runs from the date the actual payment was made by the assured.

Appeal from Pope Chancery Court; *Jordan Sellers,* Chancellor; modified and affirmed.

*U. L. Meade* and *Pace, Seawel & Davis,* for appellant.

1. The policy is an indemnity insurance policy and a liability insurance policy. 66 Ark. 562; 64 *Id.* 174. This court does not follow the rule in 72 N. H. 485.

2. The policy was assignable with or without the written consent of the insurer. Kirby's Digest, §§ 509, 517-18; 66 Ark. 243; 12 Idaho 653; 10 A. & E. Ann. Cas. 328; 157 Fed. 514; 85 C. C. A. 106; 138 Fed. 426; 133 *Id.* 816. The assignment as collateral vested in appellant a title sufficient to enable him to collect the proceeds. 112 Fed. 759; 68 Ark. 391; 77 *Id.* 60: 44 *Id.* 564; 95 *Id.* 482.

3. Under the terms of the contract appellee was liable. There was a substantial compliance, if not a strict one, with the clause as to expenses actually sustained and paid in money, etc.   81 Ark. 92;   79 *Id.* 160;   *Ib.* 266;   94 *Id.* 419;   80 *Id.* 49;   89 *Id.* 471;   67 *Id.* 553.   See also 2 Ark. 360;   8 *Id.* 494;   78 *Id.* 93;   100 Minn. 1;   10 A. & E. Ann. Cases, 673;   135 Mich. 189; 3 A. & E. Ann. Cases, 480.

4. As the assignee appellant occupies the same relation to the insurer as did the insured.   210 N. Y. 233;   53 L. R. A. (N. S.) 632;   50 Wisc. 44;   18 L. R. A. (N. S.) 121.

5. The appellee is liable for all costs and expenses, interest from the date of judgment and for the full sum of the $5,000.00.   152 Fed. 961;   82 C. C. A. 315; 12 L. R. A. (N. S.) 478;   132 Fed. 623;   157 *Id.* 514; 85 C. C. A. 106;   120 Ky. 218;   9 A. & E. Ann. Cas. 162; 135 Mich. 189;   3 A. & E. Ann. Cases, 478.

*Roscoe R. Lynn,* for appellee.

*Cockrill & Armistead,* of counsel.

1. This is an indemnity policy only.   66 Ark. 562; 64 *Id.* 174.

2. The assignment vested no right of action in appellant.   119 N. W. 308.

3. There can be no recovery except for money paid out by the assured. Payment by a sale of property is not sufficient.   159 N. W. 553.

4. Interest was erroneously allowed.   52 Wash. 124;   100 Pac. 190;   157 Fed. 519.

5. Costs should not have been allowed.

6. The real value of the lease was not more than $1,000.00, and in no event can appellant recover more than the lease sold for, and the mules $77.00, and the $426.00 paid with interest from *the date paid.*

McCULLOCH, C. J. This is an action instituted to recover on an indemnity policy issued by the defendant, Aetna Life Insurance Company, to the Arkansas Anthracite Coal Company, and by the latter assigned

to W. F. McBride. The suit was instituted for the benefit of plaintiff McBride, but the Arkansas Anthracite Coal Company, the original holder of the policy, joined as a party plaintiff.

The undertaking on the part of the insurance company, set forth in the policy, is to indemnify the assured "against loss and expense arising or resulting from claims upon the assured for damages on account of the bodily injuries or death, accidentally suffered or alleged to have been suffered, by an employee or employees of the assured * * * whether said injuries or death are accidentally suffered or alleged to have been suffered." And the policy further provides that "no action shall lie against the company to recover for any loss, and for expense under this policy, unless it shall be brought by the assured for loss or expense actually sustained and paid in money by him after the actual trial of the issue." The liability of the company is by the terms of the policy limited to the sum of five thousand dollars for loss sustained through the death or injury of a single person. There is also a clause in the policy which provides that "no assignment of interest under this policy shall be valid unless the written consent of the company is endorsed hereon." McBride was an employee of the Arkansas Anthracite Coal Company, and while working for his employer in a coal mine received personal injuries for which he recovered judgment in an action at law for the sum of $16,500.00 and costs of suit. McBride's injury occurred during the life of the policy, and the defendant concedes that it is liable for loss sustained by the coal company, the assured, for any sums actually paid by the latter in satisfaction of the judgment or any part thereof.

McBride's judgment against the coal company was rendered in November, 1913, and the sum of $426.25 was paid to McBride by the coal company on March 13, 1914. Subsequently the property of the coal company was placed in the hands of a receiver by an order of the chancery court in a suit instituted by Mc-Bride, the property consisting of some live stock and a

lease on about three hundred acres of mining lands, and the houses built thereon. The terms of the lease under which the coal company held the lands provided for the payment of royalties which amounted to about $2,-500.00 a year, and the proof shows that there were debts in the way of back pay rolls owing by the coal company amounting to something over $2,000.00. The live stock was sold separately by the commissioner of the chancery court, and brought the sum of $77.60, which was paid over to McBride, and he bid in the leasehold and other property of the coal company at the commissioner's sale for the sum of $5,000.00 and credited that amount on the judgment; but his bid was made pursuant to an agreement with the Southern Anthracite Coal Mining Company to the effect that he would bid that amount for the property and transfer his bid to said Southern Anthracite Coal Mining Company for the sum of $1,000.00 payable in cash. That agreement was carried out and said amount paid to McBride by the Southern Anthracite Coal Mining Company, was all he received out of the purchase price of the sale. The sale was made on January 2, 1915, and was subsequently confirmed by the chancery court and a deed made by the commissioner to the Southern Anthracite Coal Mining Company.

The Arkansas Anthracite Coal Company, on February 4, 1914, assigned the policy to McBride, which was before the aforementioned payment of $426.25. This action was originally instituted at law, but by consent of parties was transferred to the chancery court. Considerable testimony was submitted to the chancellor, directed mainly to the question of the actual value of the assets of the Arkansas Anthracite Coal Company at the time of the sale by the commissioner, in order to determine whether the amount of the payment to McBride should be treated as one made in good faith for the full amount of the bid, or whether the real payment only amounted to the sum of $1,000.00, which was in fact paid over to him by the Southern Anthracite Coal Mining Company. There is a sharp conflict in that testimony, but we are of the opinion

that the chancellor correctly found that, considering the royalties due under the lease and the back pay rolls due by the coal company, which constituted a fixed liability and had to be discharged before the mine could be operated, the sum of $1,000.00 which was actually paid over to McBride was a fair value for the equity of the coal company, and that that sum should be treated as the actual amount paid by the coal company on the judgment.

The chancellor found that the defendant insurance company was liable for said sum of $426.25, paid as aforesaid to plaintiff McBride by the coal company, and the sum of $77.60, the amount for which the live stock and other personal property was sold, and said sum of $1,000.00 received out of the proceeds of the sale of the lease, together with the $191.85 costs in the original suit, making a total of $1,695.70; and, after adding interest since the date of the original judgment and deducting a credit of $237.00 on unpaid premiums, rendered a decree in accordance with that finding. The plaintiff McBride appealed, and the defendant insurance company has cross-appealed.

The contention of plaintiff is that the judgment should have been for the full amount of the $5,000.00, treating the total amount of his bid for the property at the commissioner's sale as a payment on the judgment, but, as before stated, we are of the opinion that the chancellor was correct in holding that the sum of $1,000.00 was the full amount actually paid, and that that should be the limit of the plaintiff's recovery upon that item of payment. This court has heretofore decided that an insurance policy of this kind constitutes a contract of indemnity and is not one to assume liability, and it therefore follows that there must be an actual loss sustained by reason of an enforced payment of the judgment liability of the assured before the obligation of the insurer matures. This is the distinction between that kind of insurance and what is ordinarily termed liability insurance. *Fidelity & Casualty*

*Co.* v. *Fordyce,* 64 Ark. 174; *American, etc. Ins. Co.* v *Fordyce,* 62 Ark. 562.

The company only indemnifies the assured against actual loss, and the question to be determined is what the actual loss was, and when the proof is considered in its proper light it is found that the sum of $1,000.00 was the extent of the loss of the assured on that payment. The fact that the sum of $5,000.00 was actually credited on the judgment does not create a liability, notwithstanding that it reduced the liability under the judgment to that extent, for whatever the credit may have been on the judgment the actual loss sustained by the assured was the $1,000.00 which was paid over to the plaintiff McBride out of the proceeds of the sale. Whatever may be the differences of opinion between the witnesses concerning the value of the property, the best evidence of the real value is the net price which the plaintiff agreed to accept and which the Southern Anthracite Coal Mining Company agreed to pay. Anything more than that would not constitute a *bona fide* payment on the judgment.

(3) The plaintiff also contends on his appeal that he should have been allowed to recover the court costs incurred in his various efforts to collect the judgment, but we are of the opinion that the chancellor was correct in holding that he was only entitled to recover the costs paid out in the original litigation, and which was adjudged in McBride's favor against the coal company. That amount he was entitled to recover, for the reason that the payment of those costs fell within the indemnity provided by the policy. *Maryland Casualty Co.* v. *Omaha Electric Light & Power Co.,* 157 Fed. 514.

On the part of defendant it is contended that the decree was erroneous in several respects and should be reversed. The first contention is that the assignment of the policy was unauthorized and vested no right of action in the plaintiff McBride, but since the original holder of the policy, as assignor, is joined as a plaintiff, it is not a matter of any concern to the defendant whether the policy was properly assigned or not. There

is undoubtedly a liability on the part of the company to the extent of the amount paid out in satisfaction of the original judgment, and it is a matter of no concern to the company which of the plaintiffs recover it so long as it is protected by the presence of both the assignor and the assignee as parties plaintiff in the action. It is certain, however, that the clause in the policy against assignment without consent of the company applies only to assignments during the lifetime of the policy, and not to an assignment of liability which has already accrued under the policy. *Maryland Casualty Co.* v. *Omaha Electric Light & Power Co., supra.*

(4) Next it is insisted that there can be no recovery of the $1,000.00, because it was not paid in money, but resulted from the appropriation of the coal company's property. Stress is laid in the argument on the express provision of the policy that no action shall lie except for loss or expense "actually sustained and paid in money," but we think the payment in the sale of the property was equivalent to payment in money and falls within the terms of the policy. It is scarcely fair to construe the language to mean that it applied only to currency actually handed over and not to a *bona fide* payment made in other property. If that construction were put upon the policy it would be absolutely worthless to an assured who was unable to pay money and whose property would be subjected to sale, and he would thus be deprived of the indemnity for which he had contracted. Such result should not be permitted to follow under the contract unless the language admits of no other construction.

(5) The contention of the defendant with respect to costs has already been disposed of in the discussion of the plaintiff's contention in that respect. We are of the opinion, though, that the court erred in allowing interest from the date of the original judgment instead of the date of the payment. The actual loss of the insured, which the insurer undertook to indemnify against occurred when the payment was made, and interest could only begin to run at that date. The assured

enjoyed the benefit of the retention of the amount for which it was liable until the date of payment, and therefore was not entitled to recover interest.

The decree of the chancellor will therefore be modified so as to allow judgment for interest on the several payments from the respective dates on which they were made, and the clerk of this court will make the computation accordingly. In all other respects the decree will be affirmed.