LEWELLING v. MANUFACTURING WOOD WORKERS UNDERWRITERS.

Opinion delivered October 13, 1919.

1.    INSURANCE—EXCHANGE OF CONTRACTS.—Under the act of 1915, p. 610, individuals, partnerships and corporations of this State, are authorized to exchange reciprocal or inter-insurance contracts with each other, or with individuals, partnerships and corporations of other States.

2.    INSURANCE — INSURANCE ASSOCIATION—DESIGNATION OF NAME— SERVICE.—Act 152, Acts 1915, authorizing certain insurance associations to do business in the State, designated a name under which such association should do business and provided the person upon whom service should be had in all suits involving the validity of policies of insurance and contracts of the association.

3. INSURANCE ASSOCIATIONS — ACTION AGAINST — NAME.—Although Act 152, Acts 1915, does not, in express terms, provide that suit shall be brought against the insurance association under its associate name, but such is the effect of the statute when all of its parts are read in the light of each other.

4. INSURANCE—CONTROL BY STATE.—The State, in the exercise of its police power, may fully and completely regulate the business of insurance; and it may prescribe the conditions under which persons or corporations outside the State may exchange insurance with persons or corporations within the State.

Appeal from Howard Circuit Court; *James S. Steel,* Judge; reversed.

*James S. McConnell, Mann & Mann* and *Hughes & Hughes,* for appellants.

1. The court erred in quashing the service and dismissing the complaint. The concern was properly sued in its own name, Manufacturing Wood Workers Underwriters. Acts 1915, p. 610. It was a voluntary association without incorporation, but upon methods and forms used by incorporated bodies for the prosecution of a common enterprise. 5 C. J. 1333; 96 Miss. 720; 24 L. R. A. 298.

2. An unincorporated association can not, in the absence of statute, be sued in the company name, but statutory authority may be implied and it need not be expressed. 30 Cyc. 102; 235 Fed. 1; 191 App. Cases 426; 30 Cyc. 102.

3. The act itself, 1915, p. 610, makes the concern suable as a legal entity. The act requires and permits the subscribers to select a name, and when so selected may contract and be bound by that name. Here they are bound by the name selected.

4. The attorney in fact was a proper party defendant and was so named in the amended complaint and properly served with process. 105 Ark. 307; 43 L. R. A. (N. S.) 527; 94 Ark. 277. The intention of the act and of the documents in evidence is that the underwriters may be sued as an association, but if not the attorney in fact was a proper defendant, and it was error to dismiss the cause.

*Mann, Bussey & Mann,* also for appellants.

*Kinsworthy, Henderson & Kinsworthy* and *Zane, Morse & McKinney, amici curiae.*

1.   The question here is one arising out of reciprocal or inter-insurance.   96 Mass. 725, 778.

The act of 1915, p. 610, was not passed to create corporations or associations, but it is recognized that a class of contracts theretofore known and existing is brought under State regulation and is intended to authorize Arkansas corporations to make such contracts, but not to enable a corporation to become a member of an insurance association but to enable corporations to exchange inter-insurance contracts with other persons, firms and corporations and to provide regulations by and revenue to the State.   This is plain from its title.   Service must be had upon the subscribers as individuals, and they are liable.   The service was properly quashed, and suit dismissed.   57 Vt. 358; 11 S. W. 12; 53 S. W. 267; 76 *Id.* 931; 34 Ark. 144; 56 *Id.* 166; 94 *Id.* 277; 105 *Id.* 300-306. See also 50 S. E. 978; 73 Ga. 474; 33 So. Rep. 343; 30 Cyc. 98, 99, 100.

An unincorporated association can not be sued by name.   76 S. W. 931; 64 Iowa 220; 73 Ga. 474; 33 So. Rep. 343; 50 S. E. 887; 2 L. R. A. (N. S.) 788; 192 Mass. 572; 116 Am. St. Rep. 272-289.   The suit was a nullity. *Supra.*

2.   As the suit was a nullity, the complaint could not be amended.   31 Cyc. 487; 34 Ark. 144; 56 *Id.* 166; 105 *Id.* 300-306; 94 *Id.* 277.   See also 73 Ga. 474; 33 So. 343; 11 S. W. 12; 76 *Id.* 931.

3.   The subscribers were not even an unincorporated association under the act of 1915, which can be sued as such.   Cases *supra.*   The subscribers are only liable as individuals, if at all.   30 Cyc. 98 to 100; 76 S. W. 931; 60 S. E. 724; 147 N. C. 103; 7 Ga. App. 305; 52 Am. Rep. 436; 53 S. W. 267.

The rule is well settled in this State that no action lies against an unincorporated association in the absence

of express legislative authority.    94 Ark. 277; 34 *Id.*
144.    See also 2 L. R. A. (N. S.) 788; 75 N. E. 887; 116
Am. St. Rep. 272; 30 Cyc. 102; 31 Cyc. 487.

4.    The action brought was forbidden by the policy.
56 L. R. A. 193; 62 N. J. Law 16; 39 N. Y. Supp. 585;
233 Ill. 487-497.

5.    As to the liability of subscribers, see 91 Fed.
677; 48 N. Y. Supp. 239; 218 N. Y. 29; 1 Q. B. 135; 29
Mich. 254; 80 N. W. 726; 19 N. H. 560; 158 U. S. 356.

The original complaint was a nullity and unamendable, and the judgment should be affirmed.

### STATEMENT OF FACTS.

On December 14, 1918, P. J. Lewelling and Vernon
Price-Williams, a partnership, brought suit in the circuit
court to recover on a fire insurance policy issued by the
Manufacturing Wood Workers Underwriters alleged to
be organized under a statute and empowered to issue policies of fire insurance to the members thereof.    On April
23, 1918, said association issued a policy of insurance to
Allen Lumber & Box Company, insuring it against loss
or damage by fire in respect to certain sawmill property
in Howard County, Arkansas, belonging to said company
in the sum of $35,000.    The plaintiffs bought the property, and the Allen Lumber & Box Company assigned the
policy to them with the consent of the association.    Subsequently the property insured was almost entirely destroyed by fire, the loss amounting to $24,900.    Notice
and proof of loss were made according to the terms of the
policy, and although more than ninety days elapsed the
said association failed to pay the amount of the loss to
the plaintiffs.    Hence this lawsuit.

A summons was issued against the Manufacturing
Wood Workers Underwriters, which was served on the
Insurance Commissioner of the State of Arkansas on the
21st day of December, 1918.

A. J. Neimeyer Lumber Company, a domestic corporation doing a lumber business at Little Rock, Arkansas, appeared in the suit solely for the purpose of moving to dismiss it for want of a party defendant.    The

court sustained the motion and dismissed the complaint of the plaintiffs. The plaintiffs have appealed.

HART, J., (after stating the facts). (1) The Legislature of 1915 passed an act authorizing individuals, partnerships and corporations of this State to exchange reciprocal or inter-insurance contracts with each other, or with individuals, partnerships, and corporations of other States. Acts of 1915, page 610.

The only issue raised by the appeal is whether or not, in a suit to recover on a fire insurance policy, the subscriber may sue the association in its associated name. A voluntary association, being only a collection of individuals, could not, at common law, sue or be sued by its associated name, and, in the absence of an enabling act, suits against such associations should be brought against individual members. 4 Cyc. 312-313, and 5 C. J. 1369.

It is the contention of counsel for the plaintiffs that the statute under which the association was permitted to make insurance contracts in this case provides, in effect, that the association should be sued in its society or company name. The act in question is act 152 of the General Assembly of 1915, entitled An act authorizing and regulating certain classes of indemnity contracts empowering corporations to make such contracts and fixing certain fees and the penalty for violation thereof.

Section 1 authorizes the exchange of inter-insurance contracts of individuals, partnerships, and corporations.

Section 2 provides that such contracts may be executed by duly authorized and designated attorneys, and that the office where such contracts are issued shall be located as designated in the power of attorney.

Section 3 provides that the subscribers so contracting among themselves shall file with the Insurance Commissioner certain declarations, through their attorney, which shall be verified under his oath.

Section 4 is as follows: "Concurrently with the filing of the declaration provided for by the terms of section 3 hereof, the attorney shall file with the Insurance Commissioner an instrument in writing executed by him

for said subscribers, conditioned that, upon the issuance of certificate of authority provided for in section 10 hereof, service of process may be had upon the Insurance Commissioner in all suits in this State arising out of such policies, contracts, or agreements, which service shall be valid and binding upon all subscribers exchanging at any time reciprocal or inter-insurance contracts through such attorney. Three copies of such process shall be served, and the Insurance Commissioner shall file one copy, forward one copy to said attorney, and return one copy with his admission of service.''

Section 5 provides that the attorney shall file with the Insurance Commissioner a statement showing the maximum amount of indemnity upon any single risk and information as to the commercial rating of the subscribers.

Section 6 provides for a reserve sum for the payment of losses.

(2-3) It will be noted that section 4 of the act provides for service of process upon the Insurance Commissioner in all suits in this State arising out of policies issued by the association. The object of the present suit was to establish the liability of the association upon the policy sued on which was issued by the association. It is true the act does not, in express terms, provide that suit shall be brought against the association under its associated name, but such is, we think, the effect of the statute when all its parts are read in the light of each other. It would be a vain and idle thing to provide that service of process should be had upon the Insurance Commissioner in all suits in this State arising out of such policies and contracts, and that such service should be valid and binding upon all subscribers exchanging at any time reciprocal or inter-insurance contracts through the attorney in fact if the plaintiffs had to resort to the common law method of procedure as to the parties to the suit. In other words, it would be useless to provide that suits should be brought against each subscriber in his individual name and that service might be had upon the Insurance Commissioner.

Section 2 provides for the execution of the contracts by the attorney who acts for the subscribers and that the office where such contracts are issued shall be located as designated in the power of attorney. The power of attorney recites that Lee Blakemore, Incorporated, is attorney in fact for subscribers at Manufacturing Wood Workers Underwriters of the city of Chicago. The record also shows that the Manufacturing Wood Workers Underwriters is located at 1518 McCormick building, city of Chicago, State of Illinois. The insurance purports to be issued by the Manufacturing Wood Workers. Underwriters. It is true Lee Blakemore testified that Lee Blakemore, Incorporated, is attorney in fact for subscribers at Manufacturing Wood Workers Underwriters and that the Manufacturing Wood Workers Underwriters is the name or title of the office at which such subscribers proposed to exchange indemnity contracts, but when the whole record is considered we think that the Manufacturing Wood Workers Underwriters was the name under which the voluntary unincorporated association acted. In other words, the power of attorney not only designated the building, street number, and city in which the office of the association was situated, but it also designated the name under which such association made its contracts. Therefore, we are of the opinion that, when all the provisions of the statute are considered, it meant to designate a name under which the association should do business and to provide the person upon whom service should be had in all suits involving the validity of policies of insurance and contracts of the association.

Counsel who have filed a brief as *amici curiae* claim that this construction of the statute is shown to be wrong by a provision of the policy. The clause is as follows:

"In the event of litigation herein, to avoid a multiplicity of suits, no suits or other proceedings at law or in equity shall in any event be begun or maintained for the recovery of any claim upon, or by virtue of, this policy against more than one of the underwriters hereon at any time, nor in any court other than the highest court of

original jurisdiction; and that final decision in such suit, or other proceedings, shall be taken to be decisive of the similar claim, so far as the same may subsist, against each of the other underwriters hereon, absolutely fixing his liability in the premises, each of the underwriters hereon, in consideration of this entire stipulation, so far as he individually is or may be concerned, expressly agrees to accept and abide by the result of such final de-. cision in the same manner and to the same effect as if he had been sole defendant in a similar suit or proceeding as to the similar claim against him, so far as the same may subsist, save and except, however, as to the matter of costs and disbursements.''

In the first place, it may be said that the subscribers could not abrogate the statute by any provisions inserted in their policy. So at most this could be said to be only an additional remedy afforded the subscribers. We think, however, the object of this clause was to provide the method for a subscriber suing on a policy to enforce the proportionate liability against his fellow-subscribers in the event that the reserve fund on deposit was not sufficient to pay the loss. In such a case the policy holder might sue an individual subscriber for his proportionate part of such sum as would be necessary to pay the loss, the liability of each subscriber being individual and not joint. The Legislature has provided the method by which voluntary unincorporated associations may do business and the kinds of business they may do. It has provided for a reserve fund which the association may collect from its subscribers and for an attorney-in-fact who shall conduct the business of the association. The Legislature has complete control over the remedies which it gives the subscribers of such associations. It provides in express terms for the service of process in all suits arising out of policies upon the Insurance Commissioner, and by neces-. sary inference we think provides for a name under which the association may do business and under which it may bring or defend suits which are brought against it. It

adopted such a name, and the policy sued on was issued under that name.

It follows that the court erred in quashing the service of summons and in dismissing the complaint. For that error the judgment must be reversed, and the cause will be remanded for further proceedings according to law.

HART, J., (on rehearing). It is earnestly insisted by counsel in their brief on the motion for a rehearing that the opinion is in conflict with the case of *Schiele* v. *Dillard,* 94 Ark. 277, and other cases of like character which hold that, while the court may in its discretion allow additional parties plaintiff or defendant to be added, it can not make an entire change of parties, as that would be tantamount to a new suit between different parties. When the suit was first commenced, it was alleged in the complaint that the defendant was a corporation. It turned out that such was not the fact, but that it was a voluntary unincorporated association. The plaintiff asked permission to amend, and it is now insisted that the effect of such an amendment to the complaint would be to overrule the decisions referred to above. We do not think so. The plaintiff in his original complaint made a misnomer of the defendant. The only effect of the amendment would be to correct that mistake, and process should then be issued and directed to the defendant in its correct name. Of course, this process would then be served upon the defendant and form a new point for the commencement of the suit against it. Therefore, in our original opinion, we proceeded at once to what we considered the real issue in the case, and that was whether or not the statute in express terms, or by necessary implication, prescribes that in suits of this sort the association may sue or be sued in its associated name. While the statute does not prescribe in express terms that suits shall be prosecuted for and against the association in its associated name, it does do so by necessary implication.

Section two provides the name of the office at which indemnity contracts shall be issued, and that the name

shall not be similar to any other name previously adopted by similar organizations. It provides for the officer who shall execute such contracts in behalf of the association. It further provides that there shall also be filed with the insurance commissioner a copy of the form of policy by which such insurance is about to be effected or exchanged.

Section four provides that the attorney for the association shall file with the insurance commissioner an instrument in writing executed by him for the subscribers, conditioned that upon the issuance of a certificate of authority to do business in the State service of process may be had upon the insurance commissioner in all suits in this State arising out of such policies.

It would be a vain and useless thing to make all these provisions in the statute unless the Legislature intended that the corporation should sue or be sued in its associated name. If it had been intended that the association should be governed by the common law rule regulating voluntary unincorporated associations, there would have been no necessity for the provision of a name and place where the association would issue its contracts nor for that provision providing for service upon the insurance commissioner in all suits in this State arising out of policies issued by the association. The certificate of insurance sued on was issued in the name of the Manufacturing Wood Workers Underwriters. The association has complied with the statute and has held itself out and conducted its business with subscribers in this State under that name. This shows that the association in practice put the same construction upon the statute that we have. It is now insisted that such a construction of the statute renders it unconstitutional, and that it is an infringement upon the freedom to contract which the 14th Amendment of the Constitution of the United States guarantees They rely upon the case of *Allgeyer* v. *Louisiana,* 165 U. S. 578.

In the case of *New York Life Ins. Co.* v. *Dodge,* 246 U. S. 357, the court said: ''In *Allgeyer* v. *Louisiana, supra,* we held a Louisiana statute invalid which under-

took to restrict the right of a citizen while within that State to place insurance upon property located there by contract made and to be performed beyond its borders. We said: 'The mere fact that a citizen may be within the limits of a particular State does not prevent his making a contract outside its limits while he himself remains within it,' and ruled that under the 14th Amendment the right to contract outside for insurance on property within a State is one which can not be taken away by State legislation. So to contract is a part of the liberty guaranteed to every citizen. The doctrine of this case has been often reaffirmed, and must be accepted as established.''

(4) We do not think the principles there announced have any application whatever to the facts of the case at bar. That the State in the exercise of its police power may fully and completely regulate the business of insurance has been repeatedly settled both by decisions of this court and of the Supreme Court of the United States. The principle was recognized by the Supreme Court of the United States in the case last cited. The statute in question does not attempt to forbid or penalize the making of contracts of insurance outside of the State to be performed outside of the State upon property within the State. It only prescribes the conditions under which persons or corporations outside of the State may exchange insurance with persons or corporations within the State, and this was a valid exercise of police power by the Legislature and does not in any wise interfere with their freedom to contract. It only regulates their method of doing business in the State.

It follows that the original opinion will prevail, and the motion for a rehearing will be denied.