ELIZABETH SCHMID, Appellee, v. AUTOMOBILE UNDERWRITERS, INC., Appellant.

No. 41339.

OCTOBER 25, 1932.

P. J. Gallagher and James E. Goodwin, for appellee.

Walter L. Stewart, for appellant.

KINDIG, J.—On March 15, 1926, the defendant-appellant, Automobile Underwriters, Incorporated, attorney in fact for the subscribers at the State Automobile Insurance Association, issued a policy of automobile indemnity insurance to Arthur C. Peters, 1444 West Pleasant Street, Davenport, Iowa. Thereafter the insured, Arthur C. Peters, left the state of Iowa and went to the state of Oregon, where he continued to reside. While the insured Arthur C. Peters was driving his automobile, covered by the aforesaid policy, a collision occurred between that car and an automobile carrying Elizabeth Schmid, the plaintiff-appellee. As a result of that collision, the appellee was injured. She therefore commenced action in a court of Oregon to recover damages against Arthur C. Peters, the insured. Accordingly, the appellee recovered damages from said insured in the Oregon court.

Subsequently, the appellee, on February 20, 1929, commenced the present proceedings in the court below against the appellant on the policy alleged to have been issued to Arthur C. Peters, the insured. The case was tried to a jury, which rendered a verdict for the appellee. Following that verdict, a judgment was entered against the appellant in the district court. From that judgment, the appellant appeals.

I. It is argued by the appellant that the appellee is not entitled to recover for the reason that the insurance policy had lapsed for non-payment of premium.

Within the insurance contract is the following provision:

"The total one-year premium for this policy shown under 'Representations of Assured' is due the date the policy takes effect unless such due date is extended, either as to all or a part of said premium, by agreement stated in application of Assured or in writing signed by the Attorney; and the failure of the Assured to advance the premium or premiums on the due dates thereof, provided, however, that thirty days' notice of amount of premium and the date due shall have been mailed to Assured at his last known ad-

dress or delivered to him personally, whether such notice comes from the Home Office of this Association or through its Agents, shall cause this policy to lapse for non-payment of premium, and the Assured shall forfeit all his rights in the Association, including the claims for losses subsequently incurred by him; but any delinquent subscriber may be reinstated within such time and for such period and on such terms as may be agreed upon by the Attorney. This provision, however, for lapsing policy for non-payment of premium shall not be construed as a waiver of the right of the Association to cancel this policy at any time on five days' notice to Assured as hereinbefore provided."

Arthur C. Peters, the assured, obtained the policy in question March 5, 1926. At that time the premium due was $16.00, but the assured only paid $5.00 thereon. A contention is made by the appellee that one Altfilsch, a soliciting agent of the insurer, orally accepted from the insured a note for the balance due on the premium. This note, it is claimed, was due September 1 thereafter. By referring again to the policy, it will be recalled that the total premium was due March 5, 1926, "unless such due date is extended, either as to all or a part of said premium, by agreement stated in application of Assured or in writing signed by the Attorney." No such agreement was stated in the application of the assured, nor was there any such agreement in writing signed by the attorney. According to the policy, then, the premium was due March 5, 1926.

For the purpose of avoiding that result, however, the appellee suggests that the insurer waived the terms of the policy in that regard when its agent, Mr. Altfilsch, accepted the assured's note for the balance of the premium. The insurer denies that any such note was ever accepted by Mr. Altfilsch, or the association. Mr. Altfilsch testified that he attempted from time to time to collect the balance due from the assured, Mr. Peters, but that Peters left Davenport, Iowa, where the policy was written, and went to the state of Oregon, where the accident occurred. Under these circumstances, it is contended by the insurer that it had a right to lapse the policy for non-payment of the premium in accordance with the provisions of that contract, above quoted. Accordingly the insurer insists that it did, in compliance with the policy, lapse the same for the non-payment of the premiums. That was done, the insurer declares, by serving upon the assured a thirty-day notice "of amount of premium and the date due." Such notice, the insurer asserts, was mailed to

the last-known address of the assured. Manifestly, under the record, it is clear that the insured did thus lapse the policy for the non-payment of the premium.

It is clear, too, that the appellee is not entitled to recover on the theory that the insurer, by accepting the note, waived its right to lapse the policy. Waiver was not pleaded by the appellee and therefore it cannot be relied upon. Brock v. Des Moines Insurance Company, 96 Iowa 39 (local citation, 45); McCoy v. Iowa State Insurance Co., 107 Iowa 80 (local citation 83); Parsons v. Grand Lodge of United Workmen of Iowa, 108 Iowa 6; Smith v. American Insurance Company, 197 Iowa 761 (local citation 767-8); Burgess v. Stinson, 207 Iowa 1 (local citation 3).

In order to avoid this result, the appellee suggests that the lapsing of the policy was not in accordance with Section 8959 of the Code. Said section is found in Chapter 404, relating to insurance other than life. According to the section:

"No policy or contract of insurance provided for in this chapter shall be forfeited or suspended for nonpayment of any premium, assessment or installment provided for in the policy, or in any note or contract for the payment thereof, unless within thirty days prior to, or on or after the maturity thereof, the company shall serve notice in writing upon the insured that such premium, assessment, or installment is due or to become due, stating the amount, and the amount necessary to pay the customary short rates, up to the time fixed in the notice when the insurance will be suspended, forfeited, or canceled, which shall not be less than thirty days after service of such notice, which may be made in person, or by mailing in a registered letter addressed to the insured at his post office as given in or upon the policy, and no suspension, forfeiture, or cancellation shall take effect until the time thus fixed and except as herein provided, anything in the policy, application or a separate agreement to the contrary notwithstanding."

This statute, it is apparent, is not synonymous with the provision in the policy under which the appellant in the case at bar lapsed the assured's policy. For instance, under the statute the notice of forfeiture must state the amount necessary to pay the customary short rates. Also the notice, when mailed, must be addressed to the insured at his post-office address given in or upon the policy. These statutory requirements were not complied with

by the appellant in the case at bar, because it neither gave the short rate nor addressed the notice to the assured's address given in or upon the policy. Nevertheless, the notice actually given by the appellant to the assured in the case at bar complied with all the requirements in the policy. There can be no conflict, the appellee argues, between the policy and the statute for the reason that the statute must prevail. As a general proposition that theory is correct. Here, however, there are involved reciprocal or interinsurance contracts, which, in many respects, are not controlled by the general law relating to insurance.

Section 9103 of the Code declares:

"Except as provided in this chapter [408, relating to reciprocal or interinsurance contracts], the making of contracts as herein provided for and such other matters as are properly incident thereto, shall not be subject to the laws of this state relating to insurance, unless they are *therein* specifically mentioned." (The italics are ours.)

Code Section 8959, above quoted, does not specifically mention reciprocal or interinsurance contracts. Hence the reciprocal or interinsurance contracts, because of Section 9103, are not subject to the provisions contained in Section 8959. Then, the notice actually given by the appellant for the lapsing of the contract with the assured, being in full compliance with the contract, was sufficient to accomplish the lapse of the policy even though such notice does not comply with the requirements of Section 8959. A lapse of the policy was accomplished because the notice fully complied with the contract. The district court, then, wrongfully submitted the cause to the jury on the theory that the policy had not been lapsed. Error appears at this juncture.

Other matters are argued which must be discussed because of the fact that there is to be a new trial. These propositions will now be considered under the following divisions.

■■■ II. At the outset, it is argued by the appellant that this case is determined by Zieman v. United States Fidelity & Guaranty Company, 214 Iowa 468. There is a discussion in the Zieman case concerning the distinction between an indemnity and a liability contract. Obviously the contract sued upon in the Zieman case constituted an indemnity contract, unless it was made a liability agreement by Section 8940 of the 1927 Code. According to the dis-

cussion therein contained, the Zieman case proceeded upon the theory that Section 8940 of the Code, above mentioned, did not make a liability contract of the policy sued upon, because the statute applied to ordinary automobiles, as the term is usually understood, while the policy related to racing cars to be operated upon a race track. Then, because the purpose of the insurance agreement was to cover racing cars to be used on a race track, instead of ordinary automobiles to be operated on the highway, we concluded in the Zieman case (214 Iowa 468), supra, that Section 8940 of the 1927 Code did not apply. Therefore the policy could exist as an indemnity contract and be enforced as such. After reaching that conclusion, the opinion in the Zieman case then continues with the following statements:

"Moreover, the *proviso* in subsection 5-e clearly refers to cases in which the owner or operator has insured his liability for personal injury or damage. It has no reference whatever to cases in which a party takes out insurance under the express terms of which he is to be indemnified if, for any reason, he is compelled to pay damages to some other party. It would do violence to the language of the *proviso* in said subsection 5-e to hold that it applies to cases in which the owner has indemnity insurance against loss with a 'no action' clause in the contract; that is to say, a contract providing against losses actually paid by the insurer only and for which suit may only be brought by the insured."

This quoted excerpt constitutes a new ground for the decision after the conclusion was finally reached on the theory above indicated.

III. Should the principle announced in the above quoted excerpt from the Zieman case (214 Iowa 468), supra, then, become the established rule of this court? Surely not.

To accept that principle is to adopt a rule contrary to the previous holdings on analogous subject-matters in this state, and the great weight of authority in the United States. An insurance company organized under the laws of this state has such powers only as are conferred by the legislature or those which are necessarily inferred from the legislative grant. A foreign insurance corporation has no absolute right to enter the state except upon such terms as our legislature shall prescribe. Dixon v. Northwestern National Life Insurance Company, 189 Iowa 1268; Noble v. English,

183 Iowa 893; American Fidelity Co. v. Bleakley, 157 Iowa 442; Western Union Telegraph Company v. Kansas, 216 U. S. 1 (Kans.); Verducci v. Casualty Co. of America, 117 N. E. 235 (Ohio).

In the Zieman case (214 Iowa 468), the insurance company was a foreign corporation, and in the case at bar the insurer is an Iowa reciprocal insurance organization. Consequently the legislature had a right to prescribe the kind of a policy which should be used by either insurer. When so doing, the legislature declared in Subsection 5, Par. e, Section 8940, of the 1927 Code:

"* * * that should an execution on a judgment against the insured be returned unsatisfied in an action by a person who is injured or whose property is damaged, when such owner or operator has insured his liability for such personal injury or damage, the judgment creditor shall have a right of action against the insurer to the same extent that such owner or operator could have enforced his claim against such insurer had such owner or operator paid such judgment."

Having used that language in the statute under the circumstances, the legislature thereby declared that each insurance contract, whether issued by a foreign or domestic company, should contain actually, or by implication, the legislative mandate, if applicable. This thought may be more clearly expressed by quoting excerpts from some of the cases relating to the subject-matter. By way of analogy, it is said in Crozier v. Hawkeye Stages, 209 Iowa 313, reading on page 321:

"This was a statutory bond, and the defendant Underwriters Service Corporation is bound thereunder according to the terms and provisions of said statute, which bound it 'to make compensation for injuries to persons and loss of, or damage to, property resulting from the operation of such motor carrier.' "

Continuing, we said in the Crozier case, reading on page 324:

"Under the statute, the measure of obligation under the liability insurance bond is defined as 'damage * * * resulting from the operation of such motor carrier.' "

It was stated by the Supreme Court of Wisconsin in Stone v. Inter-State Exchange, 229 N. W. 26, reading on page 28:

"Although the defendant did not voluntarily insert the pro-

visions of Sections 85.25 and 204.30 in its policy, the law imputes such provisions to the policy whether written therein or not. Baumann v. West Allis, 187 Wis. 506, 527, 204 N. W. 907. The reasons which prompted the enactment of those sections and the manner in which they were intended to promote the interests of all concerned —including the public—in the business of automobile accident insurance, are well stated in the opinion in the Ducommun Case. They are remedial statutes, and should be construed most liberally to suppress the mischief and advance the remedy which they were intended to afford."

Likewise, the Ohio Supreme Court, in Verducci v. Casualty Co. of America (117 N. E. 235), supra, on pages 236-7, declared:

"Section 9510-1, General Code, becomes a part of every contract of indemnity as fully as if written therein. Its provisions must control, regardless of the terms and conditions written into the policy by the contracting parties. Sections 9510 and 9510-1, General Code, relate to the same subject-matter, and must be construed together. If by the provisions of Section 9510, General Code, authority is granted to write contracts of indemnity without limitations or restrictions as to terms, Section 9510-1 limits that authority to the writing of contracts of indemnity which contain terms consistent with its provisions. * * * In view of the fact that Section 9510-1 subrogates the injured workman to all the rights of the employer under any contract or policy of insurance of this character, the contracting parties cannot provide in the contract that no suit can be brought upon the policy except by the employer himself. It is equally clear that the further provision in the contract, that action cannot be brought thereon by the employer until after the judgment is satisfied and paid in full, is also void, for such a provision would likewise defeat the right of the employe to subrogation, and deprive him of all the benefits intended to be conferred by this statute."

Again, the Alabama Supreme Court in Continental Auto Ins. Underwriters v. Menuskin, 132 So. 883 (Ala.), on pages 884-5, made the following pronouncement:

"That section (8377 of the Alabama Code) is of course with reference only to such contracts as are governed by the laws of Alabama, including Sections 8376 and 8377, Code, and would con-

trol the question, if its conditions are complied with. Those sections are not merely remedial, but in fact are read into an Alabama contract, and nullify any of its *provisions which limit the indemnity to loss to the insured, but extend it to indemnity against liability*. The rights of the injured person under those provisions are held to be secondary and not primary." (The italics are ours.)

So, too, the Wisconsin Supreme Court, in Elliott v. Indemnity Ins. Co. of North America, 230 N. W. 87, suggested on page 89:

"Section 85.25, Stats. 1927, being incorporated into the policy as a part thereof, the policy became a contract for the benefit of the party injured, whose damages are covered by the policy."

The application of Section 8940 of the 1927 Code in principle is somewhat similar to the mechanic's lien bond cases previously considered by this court. For instance, in Monona County v. O'Connor, 205 Iowa 1119, this court said, on pages 1122-3:

"It is the law of this state, long established, that the liability of a surety on a statutory bond does not extend beyond the statutory obligations. * * * A supersedeas bond which contained provisions in excess of the obligations imposed by statute was held invalid as to such provisions. The rule and the reason therefor are well stated in Schisel v. Marvill, supra [198 Iowa 725], which was an action on a contractor's bond for damages for personal injuries resulting from the tortious or negligent acts of the contractor's employees. We said: 'The effect of this holding is that the liability of a surety under a statutory bond is measured and defined by the statute; and that a construction of the statute is a construction of the bond.' "

Also in Curtis v. Michaelson, 206 Iowa 111, reading on page 118, we again announced:

"It is well settled that the liability of a surety under a statutory bond is measured and defined by the statute requiring the bond. Additions to the bond will be treated as surplusage, and omitted provisions will be read into it."

Archer v. Equitable Life Assurance Society of the United States, 112 N. E. 433 (N. Y.).

Regardless of the language in the insurance policy concerning indemnity insurance, Section 8940 of the 1927 and present Codes, if

applicable, transforms the contract into one of liability. In such event, the words in the policy that otherwise would cause the instrument to be an indemnity contract are obliterated, and there is substituted therefor the language of the statute itself. This conclusion must result from a reading of the foregoing authorities.

Undoubtedly it is true that Section 8940 of the Code does not apply to an indemnity contract if the agreement giving rise thereto exists independent and beyond the scope of that legislation. But if the agreement is within the scope of the statute, then by the statute itself the contract must be one of liability. An insurance company cannot declare that it will not be bound by the statute. Such result cannot be accomplished by any subterfuge. If, by ostensibly entering into an indemnity contract, the statute can be thwarted, the power of the legislature would be weak indeed. It is not weak, however; for the legislation is strong enough to reach down into the unallowable contract and take from it the forbidden provisions and substitute in lieu thereof the language of the statute itself. Obviously, therefore, the foregoing excerpt quoted from Zieman v. United States Fidelity & Guaranty Co. (214 Iowa 468), supra, does not contain a correct statement of the Iowa law.

Wherefore, that portion of the Zieman case hereby is repudiated and overruled.

IV. Although the controversy therefore is not determined by Zieman v. United States Fidelity & Guaranty Co. (214 Iowa 468), supra, the appellant argues, nevertheless, that the insurance contract in question may exist and be enforced as an indemnity agreement. That the insurance contract is in the form of an indemnity undertaking, as distinguished from a liability agreement, is undoubtedly true. There can be no serious controversy about this fact.

In view of Section 8940 of the 1931 and preceding Codes, can the indemnity contract exist and be enforced as such? The appellant contends that the indemnity contract can thus exist and be enforced. On the other hand, the appellee declares that reciprocal or inter-insurance contracts are necessarily controlled by the aforesaid Section 8940. Section 9083 of the 1931 and preceding Codes provides:

"Individuals, partnerships, and corporations, including independent school districts and municipal corporations, of this state, hereby designated subscribers, are hereby authorized to exchange

reciprocal or interinsurance contracts with each other, and with individuals, partnerships, and corporations of other states, territories, districts, and countries, providing insurance among themselves *from any loss which may be insured against under the law,* except life insurance." (The italics are ours.)

Accordingly the appellee maintains that originally automobile liability or indemnity insurance was not authorized by statute. See American Fidelity Company v. Bleakley, 157 Iowa 442. So, the appellee asserts that the legislature, to authorize such insurance contracts, on April 18, 1913, passed Section 8940, Subdivision e. By way of conclusion, then, the appellee says that the only insurance which may be provided under reciprocal or interinsurance contracts by virtue of Section 9083, above quoted, is that authorized by Subdivision e of Code Section 8940.

A careful review of the statutes relating to reciprocal or interinsurance contracts, however, reveals the fact that the appellee's argument cannot be sustained. As indicated before in this opinion, Section 8940 authorizes and allows liability, as distinguished from indemnity, insurance. Therefore the only insurance authorized by Section 8940 of the Code is liability, and not indemnity insurance. Then, so far as Section 8940 is concerned, the reciprocal or interinsurance contracts under Section 9083 of the Code can provide only liability insurance. But Section 8940 of the Code is not the only law authorizing automobile insurance. Section 9029 of the 1931 Code, and its predecessors, provides:

"Any number of persons may by incorporating under Chapter 384, enter into contracts with each other for the following kinds of insurance from loss or damage by: * * *

"3. Against any or all loss, expense, and liability resulting from the ownership, maintenance, or use of any automobile or other vehicle; * * * "

Chapter 384 of the Code relates to corporations for pecuniary profit. Likewise Chapter 404 of the Code, containing Section 8940, relates to certain corporations organized under Chapter 384. Code Section 9029 refers to assessment insurance associations, while Section 8940 has to do with certain other insurance other than life. Neither Section 8940 nor 9029 expressly refers to the reciprocal or interinsurance contracts contemplated by Chapter 408 of the Code. Nevertheless, the language contained in Code Section 9083 is general,

and authorizes the providing of insurance through the exchange of reciprocal or interinsurance contracts for "any loss which may be insured against under the law." Obviously the legislature, by the phrase "any loss which may be insured against under the law," intended to empower the individuals, partnerships, corporations, etc., named in Section 9083 of the Code to exchange insurance contracts and thereby procure insurance against some loss. Otherwise the legislation would become a mere nullity. What loss, then, did the legislature contemplate might thus be insured against? Clearly the legislature expressed its thought in this regard by the use of the words "any loss which may be insured against under the law." No particular loss was mentioned as applying especially to reciprocal or interinsurance contracts.

Hence, the legislature necessarily by using the words "any loss" intended to allow the persons and institutions named in Section 9083 to provide for themselves any insurance of any kind the authority to write which is granted to any company or corporation except life insurance. Because Section 9029 authorized automobile insurance, therefore the reciprocal or interinsurance contract may cover that insurance as well as the insurance permitted under Section 8940 of the Code. That being true, it appears that there are two sections of the statutes conferring upon the persons named in Section 9083 the power to write automobile insurance. These sections, as before indicated, are 9029 and 8940 of the Code.

Under Section 8940, just mentioned, the automobile insurance authorized is only liability, as distinguished from indemnity; while under Section 9029 the automobile insurance authorized includes both liability and indemnity. In the last-named section of the Code the insurance may be against loss as well as against liability. There is no provision in Section 9029 of the Code equivalent to the one found in Section 8940 thereof authorizing a person injured to bring suit directly against the insurer. This being true, it is apparent that under Section 9029 of the Code the persons named in Section 9083 thereof may write and enforce indemnity, as well as liability, insurance. The contract in question, as before indicated, is an indemnity agreement only. So, under the authority of Zieman v. United States Fidelity & Guaranty Co. (214 Iowa 468), supra, as modified by this opinion, the indemnity contract may be enforced. It is said in the policy under consideration that "no suit or action shall be sustainable in any court of law or equity for the recovery

of any claim for loss under this contract unless brought by the assured himself or his legal representatives after a full compliance with all of the requirements herein. * * * " Suit here was brought, not by the assured, but by the appellee, who is a third party injured by the automobile of the assured.

Manifestly, then, the appellee cannot maintain the suit.

Wherefore, because of the matters above discussed, the appellant is entitled to a new trial, and the judgment of the district court must be, and hereby is, reversed.—Reversed.

STEVENS, C. J., and EVANS, FAVILLE, DE GRAFF, ALBERT, WAGNER, and BLISS, JJ., concur.