CASUALTY RECIPROCAL EXCHANGE *v.* BOUNDS.

4-4057

Opinion delivered December 2, 1935.

*Warner & Warner,* for appellant.

*Partain & Agee,* for appellee.

BUTLER, J. The appellee, Joe Bounds, recovered judgment against F. W. Dickson in the sum of $2,500 for personal injuries. After the affirmance of that judgment in this court, he sued out an execution against Dickson which was returned *nulla bona.* At the time of his injury, Dickson was a member of the Casualty Reciprocal Exchange of Kansas City, Missouri, and, as such, had been issued "an indemnity agreement" by which he was indemnified against loss from liability for damages on account of bodily injuries occasioned from accidents occurring during the life of the contract in a sum not to exceed $5,000 for injury or death to any one person. After the return of the execution, Bounds brought this suit against the appellant, basing his authority on act

No. 196, of the Acts of 1927. Appellant answered admitting the injury suffered by Bounds, the recovery of the judgment, the issuance of the execution against Dickson, and its return *nulla bona*. Appellant also admitted that Dickson was a subscriber of the Casualty Reciprocal Exchange, and, as such, had been issued a contract of indemnity against loss from liability for damages arising from injuries such as had been suffered by appellee. It denied that it had issued to Dickson any liability insurance or that it was an insurance company. It alleged *in extenso* the nature of the business engaged in by it, the agreement between its subscribers, and particularly the contract executed and delivered to Dickson. Appellant further alleged that it was operating in the State of Arkansas by virtue of the provisions of act No. 152 of the Acts of 1915, appearing in Crawford & Moses' Digest as §§ 6045 to 6057, both inclusive. It pleaded, as a defense to appellee's action, § No. 8 of its contract with Dickson, which is as follows:

"No action shall lie against the attorney or any subscriber at the Exchange, to recover for any loss under this contract unless brought by the subscriber himself, nor to recover for any loss arising under clauses (A), (B) or (C) of the special agreements or under any indorsement attached hereto unless brought by the subscriber himself to recover for moneys actually paid by him in satisfaction of a judgment after trial of the issue in a suit instituted within the period limited by the statute of limitations, and in no event shall any action lie unless brought within ninety days after the right of action accrues as herein provided." Appellant denied that it was subject to the provisions of act No. 196, *supra,* or bound by any of the provisions thereof.

A demurrer to the answer was interposed which was sustained by the court, and the appellant electing to stand upon its answer, judgment was rendered for the sum sued for, and this appeal followed.

The appellant contends that its contract with Dickson was one of indemnity which justified the incorporation into the contract of § 8 quoted. It contends that act No. 196, *supra,* has no application to contracts of this

nature entered into between its subscribers (1) because act No. 196 applies only to corporations doing an insurance business, and that, as it is not an insurance corporation, the act would have no application, and (2) because it operates under a special statute, and act No. 196 does not repeal any part thereof.

Act No. 196 is as follows: "Section 1. On and after the passage of this act no policy of insurance against loss or damage resulting from accident to or injury suffered by an employee or other person and for which the person insured is liable, or against loss or damage to property caused by horses or by any vehicles drawn, propelled or operated by any motive power, and for which loss or damage the person insured is liable, shall be issued or delivered to any person in this State by any corporation authorized to do business in this State, unless there shall be contained within such policy a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of the policy, and stating that in case execution against the insured is returned unsatisfied in an action brought by the injured, or his or her personal representative in case death results from the accident, because of such insolvency or bankruptcy, that then an action may be maintained by the injured person, or his or her personal representative, against such corporation under the terms of the policy for the amount of the judgment in the said action not exceeding the amount of the policy.

"Section 2. Whenever any policy of insurance shall be issued in this State indemnifying any person, firm or corporation against any actual money loss sustained by such person, firm or corporation for damages inflicted upon the property or person of another, such policy shall contain a provision that such injured person, or his or her personal representative, shall be subrogated to the right of the assured named in such policy, and such injured person, or his or her personal representative, whether such provision be inserted in such policy or not, may maintain a direct cause of action against the insur-

ance company issuing such policy for the amount of the judgment rendered against such assured, not exceeding the amount of the policy.

"Section 3. All laws, and parts of laws in conflict herewith are hereby repealed, and this act shall take effect and be in force from and after its passage."

The occasion for the passage of this act was doubtless the decision of this court in *McBride* v. *Ætna Life Insurance Co.,* 126 Ark. 528, 191 S. W. 5, holding that in contracts of indemnity the insured must sustain an actual loss by reason of an enforced payment of a judgment liability by him before the obligation of the insurer matures. In that case an insurance corporation was the insurer, but the principle there announced applied to all contracts of insurance by whomsoever issued, whether a corporation, or an insurer which was not a corporation. Thereafter the Legislature enacted the above-quoted law, § 1 appearing to have been copied from the New York statute, but in that statute there was no section corresponding to § 2 of our act. It will be observed that either of the sections of act No. 196, standing alone, is a complete enactment, so that if, for any reason, one of the sections might be inoperative, the other would stand.

Section 1 relates to policies of insurance issued by any corporation authorized to do business in this State and prohibits the issuance of policies unless a provision be inserted to the effect that the insolvency or bankruptcy of the insured shall not release the insurer from the payment of damages, and that where there is such insolvency or bankruptcy, a direct action may be maintained by the injured person against the insurer for the amount of the judgment previously obtained against the insured, not to exceed the amount of the policy.

Appellant contends that § 2 of the act relates solely to § 1, and that "any policy of insurance" is such as is issued only by insurance corporations, and that "the insurance company" mentioned in said § 2 means only a corporation organized for the purpose of doing an insurance business. We are of the opinion that this construction is entirely too narrow and manifestly not warranted by the broad language of § 2. In the case of *Universal*

*Auto Insurance·Company* v. *Denton,* 185 Ark. 899, 50 S. W. (2d) 592, we said: ''It thus appears that § 2 of this act (act 196) writes into the policies named in § 1 the provisions of § 1, whether they are recited in the policies or not.'' This provision in § 2 was ·altogether unnecessary, for the provision would have been impliedly written into the policy by the law itself. But § 2 does more than was noticed in the case of *Universal Auto Insurance Company* v. *Denton, supra.* By its express language it extends its application to any policy of insurance issued in this State, and provides for a direct cause of action against the insurance company issuing it. The remedy would be inadequate if restricted to corporations only and would not correct the mischief which prompted the enactment of the statute. It was not any particular class of insurance companies in the mind of the Legislature, but the nature of insurance contracts. When the act is considered as a whole, we think that the intention of the Legislature is readily discoverable, to which intention we must give effect under settled rules of construction. *Rural Special School District* v. *Special School·District,* 186 Ark. 370, 53 S. W. (2d) 579; *Dulaney* v. *Continental Life Ins. Co.,* 185 Ark. 517, 47 S. W. (2d) 1082; *Berry* v. *Sale,* 184 Ark. 655, 43 S. W. (2d) 225.

It is insisted, however, that, should the act under consideration apply to all insurance companies, it would still have no application to the appellant company because it operates under a special act which exempts it from the application of laws relating to other agencies doing an insurance business within this State. As authority for this position, appellant relies upon the presumption announced in 25 R. C. L., § 177, p. 927, against implied repeals of local or special acts by later or general acts, and especially on the cases of *Knights of Maccabees* v. *Anderson,* 104 Ark. 417, 148 S. W. 1016, and *Phillips* v. *Mosaic Templars,* 154 Ark. 173, 241 S. W. 869, where it was held that the statute relating to the imposition of penalty and attorney's fees provided by the statute in certain cases against insurance companies had no application to fraternal benefit societies. These decisions were based upon the language of the statute relating to

such societies which is, "that 'such orders, societies or associations shall be exempt from the provisions of all insurance laws of this State, and no law hereafter passed shall apply to said societies, orders or associations unless it be expressly designated therein'." Crawford & Moses' Digest, § 6071. Reliance is also placed upon the case of *Schmid* v. *Automobile Underwriters,* decided by the Iowa Supreme Court and reported in 215 Iowa 170, 244 N. W. 729, 85 A. L. R. 4, where it was held that an act similar to act 196, *supra,* did not apply to contracts between members of a reciprocal insurance exchange. This decision was grounded on the last section of chapter No. 408 of the Iowa Code relating to reciprocal or inter-insurance contracts which provides that contracts of that nature "shall not be subject to the laws of this State relating to insurance unless they are therein specifically mentioned."

The exemption of reciprocal contracts from the operation of other laws in our statute relating to reciprocal insurance is quite different from the statute under consideration in *Knights of Maccabees* v. *Anderson; Phillips* v. *Mosaic Templars,* and the Iowa case, cited, *supra.* Section 6056, Crawford & Moses' Digest, provides for the exemption, and is as follows: "Except as herein provided no law of this State relating to insurance shall apply to the exchange of such indemnity contracts." There is nothing in this provision which exempts policies issued by reciprocal insurance associations from the operation of subsequently enacted insurance laws. This was the conclusion reached by the Supreme Court of Oregon in construing a section of its reciprocal insurance law which provided: "Except as provided in this section, no law of this State relating to insurance shall apply to reciprocal or inter-insurance contracts or the exchange thereof, unless they are specifically mentioned." *Whitlock* v. *Individuals, etc.,* 138 Ore. 6 Pac. (2d) 1088.

If, then, the appellant is an insurance company, act No. 196 applies to it. That it is such there can be no question. In *Lewelling* v. *Manufacturing Woodworkers Underwriters,* 140 Ark. 124, 215 S. W. 258, the reciprocal

insurance statute was construed, and it was held that the subscribers constituted a voluntary unincorporated association for the purpose of conducting an insurance business, and might be sued by the name adopted by the association to carry on its business. There is no distinction between the words "association" and "company" when referable to a number of persons joined for the conduct of a business enterprise. When so used, the meaning of "association" and "company" is identical. 12 C. J., 220, and cases cited in note No. 64A. The only business conducted by the appellant, in so far as the record discloses, was the business of insuring its members, and it is immaterial whether the subscribers were both insurers and insured.

We conclude that the judgment of the trial court in sustaining the demurrer to appellant's answer was correct, and it is therefore affirmed.