UNIVERSAL AUTOMOBILE INSURANCE COMPANY *v.* DENTON.

4—2532

Opinion delivered May 16, 1932.

*Buzbee, Pugh & Harrison* and *Roberts & Stubble-field,* for appellants.

*McMillan & McMillan,* for appellee.

SMITH, J. This suit was brought by appellee against the following defendants: Mrs. L. E. Davis, as adminis-tratrix of the estate of Louis Davis, her deceased hus-band; Universal Automobile Insurance Company, herein-after referred to as the insurance company; the Stand-ard Oil Company of Louisiana, hereinafter referred to as the oil company, Horace Thornton, and W. H. Greene.

The suit arose out of the following facts. The plain-tiff was driving in a northerly direction in a truck loaded with lumber. An oil truck belonging to the oil company was being driven along the same road in a southerly direction. Horace Thornton was driving this oil truck. Following this oil truck, and traveling the same direction, was an automobile owned by W. H. Greene, and driven by Louis Davis. The insurance company had issued to Greene a policy of insurance, which will hereinafter be discussed. Denton, the plaintiff, testified that he first saw the oil truck as it came over the top of a hill which the road traversed, and that this truck bore to the right

of the road as it approached him, but that it would not have struck his car, even though Thornton had not pulled over to the right. That just before the oil truck passed him he saw the car driven by Davis come from behind the oil truck, and that he turned his car to the right as far as he could—so far, in fact, that he ran the wheels on the right side of his truck off the road. It was getting dark, and the oil truck had its light on, and was traveling at a moderate rate of speed. Just as plaintiff turned his car to the right as far as safety permitted, Davis drove his car between the trucks, and, as space was not afforded for its passage, a collision occurred between Davis' car and plaintiff's truck. The oil truck passed on in safety without being involved in the collision. Davis was killed as a result of the collision, and plaintiff was seriously injured. He recovered judgment against all the defendants for $2,000, and all have appealed except Greene. No contention is made that the judgment is excessive.

Liability against Davis is asserted upon the ground that he negligently and recklessly drove his car between the passing trucks, and the testimony fully sustains that contention. Two witnesses who were riding in the car with Davis testified that they first saw the oil truck when it was a hundred or two hundred yards ahead of them, and that the oil truck was on the right-hand or west side of the center of the road, and continued on that side all the time. Davis overtook the oil truck just before it passed the plaintiff's truck, and as he turned to the east or left side of the road the collision occurred. Davis at the time was driving about 35 or 40 miles per hour.

Thornton testified that he was going down grade on the west or right-hand side of the hill, and met Denton coming up the grade on the east side, and that he had gone 30 or 40 feet beyond appellee's car when the collision occurred, and that he did not know the Davis car was attempting to pass him.

Liability against the oil company is asserted upon the theory that Thornton, the driver of its truck, was negligent in not anticipating that Davis was trying to

pass him just after the cars reached the top of the hill, and in not affording Davis space so to do by turning farther to the right. At the place of the collision the road was slightly less than 26 feet wide, with low embankments and sloping ditches about 8 or 10 inches deep. The road was straight. Thornton first saw in his mirror the light of the Davis car when it was about 200 yards away, and knew that it was overtaking him. Appellee says the oil company truck was traveling about 40 feet per second, which is about 27 miles per hour, and that the Davis car was traveling about 60 feet per second, which was nearly 41 miles per hour. The testimony is conflicting as to whether Davis blew his horn. Thornton testified that he did not hear it. It is appellee's theory that when the Davis car reached the crest of the hill Thornton knew it was following him, and knew, or should have known, that Davis was about to pass him, and should have driven his car to the extreme right-hand side of the road to give sufficient space for passing.

Under these facts the jury was warranted in finding that the collision was the result of Davis' negligence, and that appellee was not guilty of any negligence contributing to his injury, and the judgment against the Davis estate must therefore be affirmed.

We are also of the opinion that, under the facts stated, the oil company is not liable, and that the sole cause of the collision was the negligence of Davis.

At § 121, vol. 3-4, page 194, Huddy's Cyclopedia of Automobile Law, it is said: "The driver of a motor vehicle overtaking another vehicle is in duty bound to look out for the car ahead, and, if such vehicle is motor driven, he must realize that the driver is engaged in handling a high-power, dangerous machine, requiring constant attention and quick action, and that his lookout is ahead and not behind. An automobilist has no right to assume that the forward conveyance will turn out to permit him to pass. He cannot drive his car ahead and take the chance that the forward vehicle will move to one side in time to permit him to make a safe passage. It is

the duty of the rear driver to keep a safe distance between the vehicles, and to keep his machine well in hand, so as to avoid doing injury to the machine ahead, so long as the driver is proceeding in accordance with his rights. Before attempting to pass the vehicle ahead, the rear driver must see that the road is clear, and, if there is not sufficient room for a safe passage, or the driver ahead does not turn out so as to afford opportunity to pass, or if, after attempting to pass, the driver of the overtaking vehicle finds that he cannot make the passage in safety, the latter must slacken his speed so as to avoid the danger of a collision, even bringing his car to a stop if necessary. In passing, the overtaking car should leave reasonable space between it and the overtaken vehicle, so as to avoid any danger of striking it.''

The numerous cases cited in the note to the text quoted sustain the text.

A similar statement of the law appears in § 8, of chap. 21, entitled, ''Following, Overtaking, and Passing Other Vehicles,'' in vol. 1 of Blashfield's Cyclopedia of Automobile Law, page 433.

The relative rights and duties of drivers of cars passing each other on the highways of the State have been declared in this State by a statute on the subject.

At the 1927 session of the General Assembly of the State of Arkansas a comprehensive act was passed, entitled, ''A Uniform Act Regulating the Operation of Vehicles on Highways.'' Act 223, Acts 1927, page 721. Section 13 of this act reads as follows:

''13. Limitations on Privileges of Overtaking and Passing.

'' (a) The driver of a vehicle shall not drive to the left side of the center line of a highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety.

'' (b) The driver of a vehicle shall not overtake and pass another vehicle proceeding in the same direction

upon the crest of a grade or upon a curve in the highway where the driver's view along the highway is obstructed within a distance of 500 feet.

"(c)   The driver of a vehicle shall not overtake and pass any other vehicle proceeding in the same direction at any steam or electric railway grade crossing nor at any intersection of highways unless permitted to do so by a traffic or police officer."

In the case of *Madison-Smith Cadillac Co.* v. *Lloyd,* 184 Ark. 542, 43 S. W. (2d) 729, it was said that the law of the road is that the automobile in front has the superior right to the use of the highway, even for the purpose of leaving it on either side to enter intersecting roads and passageways, and the traveler behind must, in handling his car, do so in recognition of the superior right of the traveler in front.   See also *Kittrell* v. *Wilkerson,* 177 Ark. 1174, 9 S. W. (2d) 788; *Bourland* v. *Caraway,* 183 Ark. 848, 39 S. W. (2d) 316.

Under the law of this State, as declared in the statute quoted above, Davis should not have attempted to pass the oil company truck until he had seen that he could do so safely, and his action to the contrary, under the undisputed evidence in the record before us, must be held to be the sole proximate cause of the collision.   It follows therefore that it was error not to have directed a verdict in favor of the oil company and of Thornton, the driver of its truck.

As has been said, judgment was rendered against the insurance company, which issued the policy which Greene carried, and the insurance company has appealed.

Two of the relevant paragraphs of the policy mentioned read as follows:

First: "The company does hereby agree to insure the assured named and described in the 'Schedule of Statements' herein, for the term therein specified, against direct loss by reason of liability imposed by law upon the assured for damages by reason of the ownership or maintenance of the automobile described in statement 6 of the 'Schedule of Statements,' and the use thereof for

the purposes described in statement 7 of the 'Schedule of Statements' (including loading and unloading thereof), to an amount not exceeding the limits hereinafter stated, if such loss be sustained on account of bodily injuries or death, etc.''

Second: ''It is understood and agreed that the insolvency or bankruptcy of the assured or other persons entitled to benefit hereunder shall not release the company from the payment of damages for injuries or loss occasioned during the life of the policy. In case execution against the assured or such other defendants is returned unsatisfied in an action brought by the injured (or if death results from the accident by such other parties in whom the right of action vests) an action may be maintained by the injured person (or such other parties in whom the right of action vests) against the company for the amount of the judgment of said action not exceeding the amount of the policy.''

At the 1927 session of the General Assembly an act was passed to regulate accident and liability insurance companies doing business in this State. Act 196, Acts 1927, page 667. This act reads as follows:

''Section 1. On and after the passage of this act no policy of insurance against loss or damage resulting from accident to or injury suffered by an employee or other person and for which the person insured is liable, or against loss or damage to property caused by horses or by any vehicles drawn, propelled or operated by any motive power, and for which loss or damage the person insured is liable, shall be issued or delivered to any person in this State by any corporation authorized to do business in this State, unless there shall be contained within such policy a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of such policy, and stating that in case execution against the insured is returned unsatisfied in an action brought by the injured, or his or her personal representative in case

death results from the accident, because of such insolvency or bankruptcy, that then an action may be maintained by the injured person, or his or her personal representative, against such corporation under the terms of the policy for the amount of the judgment in the said action not exceeding the amount of the policy.

"Section 2.   Whenever any policy of insurance shall be issued in this State indemnifying any person, firm or corporation against any actual money loss sustained by such person, firm or corporation for damages inflicted upon the property or person of another, such policy shall contain a provision that such injured person, or his or her personal representative, shall be subrogated to the right of the assured named in such policy, and such injured person, or his or her personal representative, whether such provision be inserted in such policy or not, may maintain a direct cause of action against the insurance company issuing such policy for the amount of the judgment rendered against such assured, not exceeding the amount of the policy."

It thus appears that § 2 of this act writes into the policies named in § 1 the provisions of § 1, whether they are recited in the policies or not.

Section 1 of this act is copied almost literally from an act passed in New York in 1918. (Laws of 1918, chap. 182), and the constitutionality of the act was upheld by the Supreme Court of the United States in the case of *Merchants' Mutual Automobile Liability Insurance Co.* v. *Smart*, 267 U. S. 126, 45 S. Ct. 320, 69 L. ed. 538. The New York statute has no section corresponding to § 2 of our act, set out above.

The policy issued to Greene was evidently prepared to conform to the New York statute, as well as our own, and it contains the paragraph concerning the insolvency of the assured, set out above.

It was insisted—and the court below held—that the provisions of this policy, read in conjunction with our statute, entitled plaintiff to bring an original or primary

suit against both Greene and the insurance company, and, as has been said, there was a judgment against both.

The case of *New York Indemnity Co.* v. *Ewen*, 221 Ky. 114, 298 S. W. 182, was one in which an original suit was brought against both the insured, whose negligence was alleged to have occasioned the plaintiff's injury, and an insurance company which had written a policy of insurance very similar to the one here sued on. It was alleged and proved in that case, as it was also in the instant case, that the insured defendant was insolvent, and it was insisted there, as it is here, that the provision in regard to insolvency, that fact being alleged, authorized the joinder of the insurance company in the suit brought to determine the liability of the insured and the extent thereof.

After a review of the authorities, it was said by the Supreme Court of Kentucky that the policy provided indemnity only against loss, and not against liability for loss, and did not authorize the joinder of the insurance company in a direct suit and, in that connection, said: "Paragraph G" (the one relating to the insolvency of the assured) "goes on to provide that the claimant, in the event of insolvency or bankruptcy of the assured, shall have the right to maintain an action against the company for the recovery of *such indemnity*. Such indemnity, as we have seen, is the indemnity *against loss from liability*. This being true, we think these observations of the Supreme Court of Arizona, in the case of *Smith Stage Co.* v. *Eckert*, 21 Ariz. 28, 184 Pac. 1001, 7 A. L. R. 995, are quite apposite: 'It also appears from what we have said that the words 'loss and damage' mean a real loss—one, at least so far as the indemnity company is concerned, that has been put into judgment against the assured.' Paragraph G, in our judgment, was not intended to change the effect of the policy in any respect except to provide that, if after a judgment has been obtained against the assured and the injured party was then unable to collect that judgment by reason of the insolvency or bankruptcy of the assured, then and only

in that event the insurance company would be responsible to the injured party in a direct action.''

We concur in this view, and the following cases construing similar policies are to the same effect: *Smith Stage Co.* v. *Eckert*, 21 Ariz. 48, 184 Pac. 1001; *Hanson* v. *Haymann*, (Tex. Civ. App.), 280 S. W. 869; *Bowers* v. *Gates*, 201 Mich. 146, 166 N. W. 880; *Aplin* v. *Smith*, 197 Iowa 388, 197 N. W. 316; *Van Derhoof* v. *Chambon and State Farm Mut. Auto. Ins. Co.*, 8 Pac. (2d) 925; *American Auto. Ins. Co.* v. *Struwe*, (Tex. Civ. App.) 218 S. W. 534.

We do not think the provisions of the policy sued on, or those of our statute, above quoted, in regard to the insolvency of an insured, whose wrongful act caused loss or damage, were intended to confer an original cause of action against the insurer to recover the loss or damage, nor does the fact that it was alleged and proved that the tortfeasor—the insured—was insolvent affect either the recitals of the statute or the obligations of the contract of insurance, although it is known in advance, and alleged, that a *nulla bona* return will be made upon an execution which may be issued upon any judgment recovered against the insured. The statute does not appear to contemplate that the insurer shall be made a party to an original suit to determine the question of liability and the extent thereof, but does provide that, after an execution is returned unsatisfied (which execution could not be issued until after there had been a judgment upon which to base the execution), ''that *then* an action may be maintained by the injured person, or his or her personal representative, against such corporation under the terms of the policy for the amount of the judgment in said action not exceeding the amount of the policy,'' and this right of action is not defeated by the insolvency or bankruptcy of the person insured, notwithstanding the fact that the policy would otherwise be one of indemnity merely.

In other words, the effect of the provisions of the policy and of the statute regarding insolvency is that,

notwithstanding that the policy is one of indemnity to the insured, the fact that he was insolvent or bankrupt, and thereby unable to respond in damages for his wrongful act, shall not operate to relieve the insurer. If, by an execution issued upon a judgment for the loss or damage, the injured plaintiff could collect, and did collect, his damages, he would not be concerned about the policy of insurance. But, if he is unable to collect his judgment, "then an action may be maintained" against the insurer. Until the injured party has recovered a judgment to compensate his "loss or damage," he can have no cause of action against the defendant indemnitor, which is neither a necessary nor a proper party to a direct suit for the damages.

We have here a policy conforming to the statute which created a cause of action which would not otherwise exist, and the cause of action thus created can only be maintained under conditions specified, which are that, upon an execution being returned unsatisfied, the plaintiff in the judgment may maintain an action against the insurer for the amount of the damage not exceeding the amount of the policy.

We are cited to certain cases which it is asserted have held to the contrary, but there are points of difference in the policies construed or in the applicable statutes of the States where the cases arose. At any rate, we have given our statute what we regard as a fair and proper construction, and that is, that the insurer may be sued only upon a judgment previously recovered against the insured, in which suit the insurer was neither a necessary nor a proper party.

The provision of the policy that "* * * an action may be maintained by the injured person (or such other parties in whom the right of action vests) against the company for the amount of the judgment of said action not exceeding the amount of the policy" does not contravene our statute, but conformed to it, and, as no original or direct cause of action is conferred against the indemnitor, the judgment against it must be reversed, and that cause

of action will be dismissed as having been prematurely brought. This order does not, of course, affect the right of appellee to sue the insurance company, if unable to collect his judgment against the Davis estate.