**CANNON BALL MOTOR FREIGHT LINES**
et al. v. GRASSO et al.
No. 9013.

Court of Civil Appeals of Texas.
San Antonio.
Feb. 22, 1933.

Rehearing Denied April 12, 1933.

Eskridge & Groce and Geo. T. Rice, all of San Antonio, for appellants.

Champe G. Carter, Randolph L. Carter, H. C. Carter, and Perry J. Lewis, all of San Antonio, for appellees.

MURRAY, Justice.

Volker Grasso, appellee herein, brought this suit against the Cannon Ball Motor Freight Lines, a corporation, and the Universal Casualty Company, also a corporation. He sought damages for injuries sustained by him as a result of a collision between the automobile he was driving and a truck belonging to the defendant freight lines. Grasso further alleged that the casualty company had issued to the freight lines a casualty insurance policy required by the laws of this state, and the regulations of the Railroad Commission. He also alleged the insolvency of the freight lines.

A plea in abatement, setting up misjoinder of parties and causes of action by the casualty company, was overruled by the court below.

The first proposition made by appellants is as follows:

"Where, as was this one, a case is submitted to the jury on special issues, there being fourteen special issues relative to defendant's negligence and plaintiff's contributory negligence, it was error for the court to include in the charge just before the fifteenth special issue, being on the amount of damages, the following:

" 'If in response to the foregoing question you have answered that the defendant's truck was operated in a negligent manner, and that such negligence, if any, caused the injury to the plaintiff, and if you have also answered that the plaintiff was not guilty of negligence contributing to the accident, then you will answer the following question, otherwise you need not answer the following question.'

"The said matter having been duly objected to because the same informed the jury of the effect of their answers and is in effect a general charge."

Articles 2189 and 2190, Revised Statutes 1925, construed together, provide, among other things, that, when the court submits a case upon special issues, he shall submit all the issues made by the pleading. Such special issues shall be submitted distinctly and separately. Each issue shall be answered by the jury separately. In submitting special issues, the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues.

■ Under these provisions it is well settled that the giving of a general charge along with special issues is error. Kemper v. Police & Firemen's Ins. Ass'n (Tex. Com. App.) 48 S.W.(2d) 254; St. Louis S. W. R. Co. v. Hudson (Tex. Com. App.) 17 S.W.(2d) 793; Radford Grocery Co. v. Andrews (Tex. Com. App.) 15 S.W.(2d) 218; Texas & Pac. Ry. Co. v. Perkins (Tex. Com. App.) 48 S.W.(2d) 249; Roberts v. King (Tex. Civ. App.) 49 S.W.(2d) 991, 992; Solo Serve Co. v. Howell (Tex. Civ. App.) 35 S.W.(2d) 474. In the case of Roberts v. King, supra, Chief Justice Fly uses the following language: "It is apparent that the charge is a flagrant violation of the law and the decisions, against the intermingling of the submission of special issues and general charges."

■ It is equally as well settled in this state that it is error for the court or counsel to inform the jury of the legal effect or ultimate result of their answers where they do not already know such result. In the same case of Roberts v. King, supra, Chief Justice Fly also uses this language: "In theory, at least, the jury is not supposed to know the ultimate result of their answers to special issues, and it is necessarily inappropriate and prejudicial to indicate the result of answers to questions propounded. The charge was fully excepted to by the appellants, and such exceptions have been duly presented to this court, and must be sustained." There are many authorities upon this point; the following are some of them: Wichita Valley R. Co. v. Southern Casualty Co. (Tex. Com. App.) 284 S. W. 940; Humble Oil & Refining Co. v. McLean (Tex. Com. App.) 280 S. W. 557; McFaddin v. Hebert, 118 Tex. 314, 15 S.W.(2d) 213.

■■ From the authorities above cited, it is apparent that, if the charge complained of was a general charge, or if it informed the jury of the effect of their answers to the special issues submitted to them, it was an improper charge. We feel that the exception was well taken to this charge, and that it should not have been given over appellant's objection. In the first place, it was not necessary to tell the jury to answer issue No. 15 only in the event they found that appellant was guilty of negligence and that appellee was not guilty of contributory negligence. The jury could have answered the amount of damage appellee had suffered, regardless of whether he was guilty of contributory negligence or whether or not appellant was guilty of negligence. The question of negligence would have had an all-important effect upon the ultimate result of their answers, but could not assist them in any way in determining the amount of damages. Appellee seeks to justify this instruction by the court upon the ground that the jury may have already answered that the appellant was not guilty of negligence and that the appellee was guilty of contributory negligence, and then be unable to agree as to the amount of damages; thus resulting in a hung jury.

If a jury reports to a court that they have answered part of the issues, but are unable to agree upon the answer to some of the other issues, then it would become the duty of the court, if he regarded the jury as hopelessly hung, to instruct them to answer such questions as they were able to answer, to sign and return their verdict, and, if on examination it be found that they had answered sufficient questions to support a judgment, a mistrial would be averted. This charge was not a necessary instruction. The effect of it was to tell the jury that, unless they found that appellant was guilty of negligence, causing the collision, and appellee was not guilty of contributory negligence, they could not find for appellee in any amount. This is a general instruction, and also tells the jury of the ultimate effect of their answers to at least thirteen of the preceding fourteen special issues. It might be contended that this instruction coming after all but the last issue would not furnish them information until after such issues had been answered. We do not think this would keep the instruction from being harmful. In the first place, the judge is required to read the charge to the jury, and thus it will be seen that before they retire to deliberate they have heard the entire charge read. But we will say this made no impression upon them, and that in their deliberations they took up the issues in their numerical order, answering them in the same order, then, before answering the fifteenth issue, they read this instruction, and are thereby directed to check back over their answers and ascertain whether or not they have found in a certain way on each issue, and, unless they have done so, there can be no amount of damages, then it is discovered that they have found that there was contributory negligence, and therefore they cannot answer the amount of damages. The jury could then change their answers so as to permit the party that they desired to win to recover judgment. This would destroy the very purpose of special issues, and is condemned by a long line of decisions, some of which are cited above.

Appellee points out that this instruction does not tell the jury not to state the amount in the event they have found that the collision was an unavoidable accident. This further illustrates that the instruction was unnecessary. If the jury was permitted to find the amount of damage, even though the collision was an unavoidable accident, they might as well do so, even though they had found that the defendant was not guilty of negligence and that the plaintiff was guilty of contributory negligence.

Appellants' second proposition raises the question of misjoinder of parties and causes of action, in that the insurance company was joined with the alleged negligent party. It is plain from an examination of the record that the insurance policy involved in this case, by its terms, is one of indemnity and not of public liability. In the case of Cuellar v. Moore, an opinion by this court, reported in 55 S.W.(2d) 244, it is definitely settled that under insurance policies such as we have in this case the insurance company cannot be joined with the alleged negligent party in a suit to establish the amount of damages. Ample authority is therein cited for this holding.

Appellees in their reply to appellants' second proposition raise the question that the alleged negligent party, being a common carrier for hire and by the provisions of article 911b, § 13, Vernon's Ann. Civ. St., is required to carry casualty insurance before it can secure a certificate of public convenience and necessity, and that such policy is required to be filed with the Railroad Commission of Texas; and allege that these are sufficient facts to take this case out of the general rule announced in the case of Cuellar v. Moore.

Section 13, art. 911b, provides, among other things: "That the obligor therein [meaning insurance policy] will pay to the extent of the face amount of such insurance policies and bonds all judgments * * * that such judgments will be paid by the obligor in said bonds and insurance policies irrespective of the solvency or insolvency of the motor carrier. * * * Provided further that in the event the insured shall abandon his permit or certificate and leave the State, a claimant, asserting a claim within the provisions of said bonds or policies, may file suit against the company * * * without the necessity of making the insured a party to said suit."

It seems to us that a fair construction of this statute would be that the insurance company would only become liable after the amount of injury and damages had become fixed in a final judgment, except where the alleged negligent party had abandoned his permit or certificate and left the state, in which event the injured party could file suit directly against the insurance company without the necessity of making the insured a party to the suit. There is nothing in the statute which would make the insurance company directly responsible to third parties, with the one exception expressly set forth.

The disposition made of appellants' first and second propositions renders the third proposition immaterial.

For the error pointed out, the judgment of the trial court is reversed, and the cause remanded.

## On Motion for Rehearing.

The twelfth paragraph of appellee's motion for a rehearing is as follows:

"This Court erred in holding that the portion of the Court's charge just preceding the issue submitting the amount of damages

" 'If in response to the foregoing question you have answered that the defendant's truck was operated in a negligent manner, and that such negligence, if any, caused the injury to the plaintiff, and if you have also answered that the plaintiff was not guilty of negligence contributing to the accident, then you will answer the following question; otherwise you need not answer the following question:' constituted reversible error, because in so holding the decision of this Court holds differently upon a question of law, and is in conflict with a prior decision of its own, and of other Courts of Civil Appeals, and of the Supreme Court in the following cases: D. & H. Truck Line v. Hopson (Tex. Civ. App.) 4 S.W.(2d) 1013; D. & H. Truck Line v. Lavallee (Tex. Civ. App.) 7 S.W.(2d) 661; Texas Landscape Company v. Longoria (Tex. Civ. App.) 30 S.W.(2d) 423; Ineeda Laundry v. Newton (Tex. Civ. App.) 33 S.W.(2d) 208, 211; Texas Employers' Insurance Association v. Heuer (Tex. Civ. App.) 10 S.W.(2d) 756, 759; Missouri, O. & G. Railway v. Webb (Tex. Civ. App.) 178 S. W. 728."

The three cases first cited do not discuss the question here raised in such a way as to disclose on the face of the opinion that this question was in these cases. Appellee, realizing this fact, has accompanied his motion for a rehearing with copies of briefs to disclose the fact that this question was actually raised in these three cases and either overruled without comment or ignored by the court. There is nothing said in these opinions which conflicts with what we have said in our original opinion.

Appellee next mentions Ineeda Laundry v. Newton; there the complaint was with reference to questions 11, 12, and 13. By question 11 the court inquired of the jury if appellee received injuries in the collision with appellant's truck; by question 12 the jury was asked whether or not the truck was being operated by an agent or employee of appellant. Question 13 submitted to the jury, "What sum of money paid now would, in your judgment, compensate the plaintiff for the injuries, if any, received by her?" In connection with these questions, the court instructed the jury that, if they had answered questions 11 and 12 "No," then not to answer question 13. There was of course nothing improper in this instruction. If there was no injury, it would have been confusing, and, on the weight of the evidence, for the court to require the jury to find the amount of damages when they had previously answered that there was no injury. In the case at bar the injury was undisputed. Grasso had lost an arm as a direct result of this collision and the jury could have properly stated the amount of his damages independent of the question of negligence. Texas Employers' Ins. Ass'n v. Heuer (Tex. Civ.

App.) 10 S.W.(2d) 756, 759, is a similar case to the Ineeda Laundry Case.

In Missouri, O. & G. R. Co. v. Webb (Tex. Civ. App.) 178 S. W. 728, the court said in effect that the giving of a general charge in a case submitted on special issues was harmless error. This opinion was rendered June 6, 1915, at which time submission of cases on general charges was rather the usual custom, and submission on special issues was rather new in this state. There are so many recent opinions which in effect overrule the opinion in that case, and the case on which it is based, Texarkana, etc., R. Co. v. Casey (Tex. Civ. App.) 172 S. W. 729, that we will not attempt to cite all of them. In addition to those cited in our original opinion, we add: McDaniel v. Morrison (Tex. Civ. App.) 42 S. W.(2d) 454; Tex. Ind. Ins. Co. v. Davis (Tex. Civ. App.) 32 S.W.(2d) 240; Kemper v. Police & Firemen's Ins. Ass'n (Tex. Com. App.) 48 S.W.(2d) 254; Solo Serve Co. v. Howell (Tex. Civ. App.) 35 S.W.(2d) 474; Southwestern Land & Loan Co. v. Burr (Tex. Civ. App.) 285 S. W. 675, 678; Hovey v. See (Tex. Civ. App.) 191 S. W. 606; St. Louis Southwestern Railway Co. v. Osborne (Tex. Civ. App.) 270 S. W. 922, 923.

Appellee further contends that, even if the charge was error, it was harmless error, as no resulting injury was shown.

■ We cannot agree with this contention. When an erroneous instruction is given, then a reversal of the judgment must follow, unless it clearly appears that no prejudice resulted to the losing party by reason thereof. Walker v. Dawley (Tex. Civ. App.) 4 S.W.(2d) 159; Floyd v. Fidelity Union Casualty Co. (Tex. Com. App.) 39 S.W.(2d) 1091; Hewitt v. Buchanan (Tex. Civ. App.) 4 S.W.(2d) 169; article 2189, R. S. 1925.

In Humble Oil & Ref. Co. v. McLean (Tex Com. App.) 280 S. W. 557, 559, an opinion by the Commission of Appeals, and approved by the Supreme Court, Judge Harvey said:

"Every party litigant has the right to have his case tried in accordance with such statutory provisions. If this right be violated, over his objection, by the submission of instructions not authorized by statute, injury to the objecting party is presumed; and, unless it clearly appears that no injury or prejudice results to him, or his cause, he is entitled to a new trial. * * *

"In such a case, it is not required that the objecting party, in stating his objection, shall point out specifically in what particular way such a charge operates prejudicially to his cause, but it is sufficient that he directs attention to the fact that such charge is a general one not authorized by the statutes, and that he bases his objection on that ground."

Our attention is called to Commercial

341

Standard Ins. Co. v. Paul M. Caster, by the Court of Civil Appeals for the Tenth District at Waco, decided March 30, 1933,[1] in which it is held that there is no error in the charge under consideration. The authorities cited in that opinion are D. & H. Truck Line v. Hopson, supra; D. & H. Truck Line v. Lavallee, supra; and Texas Landscape Co. v. Longoria, supra. As we said above, the opinions in these cases do not contain one word of discussion of this charge. We cannot agree with that opinion.

■ Appellee further contends that in our original opinion, wherein we held that there was a misjoinder of parties, we are in conflict with the following cases: Paul v. Dutton (Tex. Civ. App.) 55 S.W.(2d) 606; American Fidelity & Casualty Company v. Williams (Tex. Civ. App.) 34 S.W.(2d) 396, 402; Monzingo v. Jones (Tex. Civ. App.) 34 S.W.(2d) 662; Thurman v. Chandler (Tex. Civ. App.) 52 S.W.(2d) 315; American Auto Ins. Co. v. Struwe (Tex. Civ. App.) 218 S. W. 534, and Commercial Standard Ins. Co. v. Caster, supra. We are not in conflict with American Auto Ins. Co. v. Struwe, because the city ordinance under which the insurance policy was issued in that case is sufficient to distinguish it from this case, in that the ordinance required such insurance to inure to the benefit of the public. In Paul v. Dutton and Thurman v. Chandler, supra, the court makes it plain that they base their decisions on Monzingo v. Jones, so what we shall hereafter say with reference to this case will apply also to Paul v. Dutton and Thurman v. Chandler.

In American Fidelity & Casualty Co. v. Williams the injured party first secured judgment against the assured and then brought suit on this judgment against the insurance company. The facts are so different in that case from those in the case at bar that we do not deem it necessary to discuss the same further.

In Commercial Standard Ins. Co. v. Caster, supra, the court bases its holding largely on the Monzingo Case and Texas Landscape Co. v. Longoria, supra. If the Longoria Case is to be construed as holding that an insurance company can be properly joined with the assured under a policy such as we have in the present case, it has been in effect overruled by Cuellar v. Moore, supra, and the very recent case of Ray v. Maxon (Tex. Civ. App.) 56 S.W.(2d) 469. We feel that Cuellar v. Moore and Ray v. Maxon correctly state the law in cases where a private individual is the assured in a policy, such as is described in those two cases, and especially is this true where the policy has what is known in legal parlance as a no-action clause.

This leaves just two other questions to be disposed of, which are: (1) Does the absence of a "no-action" clause in the policy change

the rule? and (2) Does the statute with reference to bus companies and truck lines, to wit, section 11 of article 911a, and section 13 of article 911b, change the rule?

If we should follow the Monzingo v. Jones, Paul v. Dutton, and Commercial Standard Ins. Co. v. Caster Cases, we would answer these questions in the affirmative. We do not follow these cases. We agree with the holding on these questions in American Fidelity & Casualty Co. v. Jones Transfer & Storage Co. (Tex. Civ. App.) 46 S.W.(2d) 1054, and American Automobile Ins. Co. v. Cone (Tex. Civ. App.) 257 S. W. 961.

We do not feel that the no-action clause alone is the determining feature. The real question is, Does the policy by its terms expressed or implied give to injured parties a direct right to sue the insurance company, or are they required to first secure judgment against the assured before they can have a cause of action against the insurance company? We think that the provisions in the policy in the present case are sufficient to clearly show that the policy was strictly personal between the insurer and the assured; that no other person had any claim against the assured until he had secured a judgment establishing the amount of his damages.

■■ The court is bound by the language which the two contracting parties saw fit to use. It cannot write something into the contract of insurance that the parties themselves did not write. It is true that the provisions in an insurance policy are to be construed strictly against the insurance company because the language is selected by the insurance company. However, this rule does not apply to strangers to the contract.

■ What are the stipulations contained in the policy under investigation? The policy under consideration provides as follows:

(a) "To insure the assured named and described against direct loss by reason of liability imposed by law upon the assured."

Shall this be construed to mean liability not imposed by law, when it says liability imposed by law? We think not. Universal Auto Ins. Co. v. Denton, 185 Ark. 899, 50 S.W. (2d) 592; Engler v. Hatton (Tex. Com. App.) 12 S.W.(2d) 990; Owens v. Jackson-Hinton Gin Co. (Tex. Civ. App.) 217 S. W. 762; American Auto Ins. Co. v. Cone (Tex. Civ. App.) 257 S. W. 961; Hanson v. Haymann (Tex. Civ. App.) 280 S. W. 869; American Fidelity & Casualty Co. v. Jones, etc., Co. (Tex. Civ. App.) 46 S.W.(2d) 1054; In re Harrington Motor Co., [1928] 1 Ch. 105, 59 A. L. R. 1111; Fenton v. Poston, 114 Wash. 217, 195 P. 31; Duerler Mfg. Co. v. Dullnig (Tex. Civ. App.) 83 S. W. 889; Bowers v. Gates, 201 Mich. 146, 166 N. W. 880; Van Derhoof v. Chambon, 121 Cal. App. 118, 8 P.(2d) 925; New York Ind. Co. v. Ewen, 221 Ky. 114, 298 S. W. 182;

[1] Rehearing pending.

Aplin v. Smith, 197 Iowa, 388, 197 N. W. 316; O'Neal v. Pocahontas Transp. Co., 99 W. Va. 456, 129 S. E. 478; Smith Stage Co. v. Eckert, 21 Ariz. 28, 184 P. 1001, 7 A. L. R. 995; Small v. Morrison, 185 N. C. 577, 118 S. E. 12, 31 A. L. R. 1135; Atlas Hardwood Lumber Co. v. Georgia Life Ins. Co., 129 Tenn. 477, 167 S. W. 109; Embler v. Hartford, etc., Co., 158 N. Y. 431, 53 N. E. 212, 44 L. R. A. 512; Carter v. Aetna Life Ins. Co., 76 Kan. 275, 91 P. 178, 11 L. R. A. (N. S.) 1155; Travelers' Ins. Co. v. Moses, 63 N. J. Eq. 260, 49 A. 720, 92 Am. St. Rep. 663; Puget Sound Imp. Co. v. Frankfort, etc., Co., 52 Wash. 124, 100 P. 190; Bain v. Atkins, 181 Mass. 240, 63 N. E. 414, 57 L. R. A. 791, 92 Am. St. Rep. 411; Frye v. Bath, etc., Co., 97 Me. 241, 54 A. 395, 59 L. R. A. 444, 94 Am. St. Rep. 500; Charlton v. Van Etten (D. C. Minn.) 55 F.(2d) 418; Universal Auto Ins. Co. v. Denton, 185 Ark. 899, 50 S.W.(2d) 592.

(b) "In event a final judgment be rendered against the assured, to pay the same to an amount not exceeding the limit specified herein."

Shall this language be construed as meaning that liability shall start before final judgment? In O'Neal v. Pocahontas Transportation Co., 99 W. Va. 456, 129 S. E. 478, 480, the West Virginia court, in construing a policy with such a provision, said: "The policy pleaded is a contract between the assured * * * and the insurance company, whereby it is stipulated that it will pay and satisfy judgments finally establishing the assured's liability in actions for damages. * * * There is no privity of contract between the injured person and the insurance company. The remedy, well established, is by a suit against the tort-feasor alone."

We agree with this statement. Aplin v. Smith, 197 Iowa, 388, 197 N. W. 316. In Bowers v. Gates, 201 Mich. 146, 166 N. W. 880, 881, the court said: "Nothing in the contract gives him [the injured party] any right of action in tort, or otherwise, against the insurer of the alleged tort-feasor. The law upon that subject is elementary in principle."

■ (c) "It is understood and agreed that the insolvency or bankruptcy of the assured shall not release the company from the payment of damages, for injuries or loss occasioned during the life of the policy. In case execution against the assured * * * is returned unsatisfied in an action brought by the assured * * * an action may be maintained by the injured person * * * against the company for the amount of the judgment of said action not exceeding the amount of the policy."

Can it be said that, because the insurer gave the alleged injured party a secondary right, thereby a stranger to the contract acquired a primary right? It has been well settled in a number of states that under this clause the injured party acquires no pri-

mary rights. Universal Auto Ins. Co. v. Denton, 185 Ark. 899, 50 S.W.(2d) 592; New York Indemnity Co. v. Ewen, 221 Ky. 114, 298 S. W. 182; Edwards v. Fidelity & Casualty Co., 11 La. App. 176, 123 So. 162; Smith Stage Co. v. Eckert, 21 Ariz. 28, 184 P. 1001, 7 A. L. R. 995; Aplin v. Smith, 197 Iowa, 388, 197 N. W. 316; Van Derhoof v. Chambon, 121 Cal. App. 118, 8 P.(2d) 925; United States Fid. & Guaranty Co. v. Williams, 148 Md. 289, 129 A. 660.

■ (d) "All rights hereunder are strictly personal to the assured named in this policy."

Shall this language be construed to mean that all rights are not strictly personal to the assured? This stipulation should be given its plain and unmistakable meaning.

■ (e) "If a claim is made on account of any such accident, the assured shall give like notice thereof immediately after such claim is made with full particulars. If thereafter any suit is brought against the assured to enforce such claim, the assured shall immediately forward to the Company, or its authorized agent, every summons or other process as soon as the same shall have been served. Whenever requested by the Company, the assured shall aid in effecting settlement, securing information and evidence, the attendance of witnesses and in prosecuting appeals, and at all times render all possible cooperation and assistance. The assured shall not voluntarily assume any liability or interfere in any negotiations for settlement or in any legal proceedings, or incur any expense, or settle any claim, except at assured's own cost without the written consent of the company previously given."

It has been definitely held in other states that this stipulation confers no primary rights upon injured parties.

Justice Cardozo, in Coleman v. New Amsterdam Casualty Co., 247 N. Y. 271, 160 N. E. 367, 368, 72 A. L. R. 1443, says: "If the terms could be disregarded, insurers would be helpless to defend themselves against chicanery or covin. They might then be held, though there had been neither notice of the claim nor opportunity reasonably prompt to investigate the merits." See, also, Hynding v. Home Accident Insurance Co., 214 Cal. 743, 7 P.(2d) 999; Lorando v. Gethro, 228 Mass. 181, 117 N. E. 185, 1 A. L. R. 1374; Piper v. American Fidelity & Casualty Co., 157 S. C. 106, 154 S. E. 106; Smith Stage Co. v. Eckert, supra.

■ Under accepted rules for the construction of contracts, where a stranger contends that it was intended that the provisions of a contract should inure to his benefit, such intention must be clearly apparent. In the policy under consideration it does not clearly appear that the injured parties shall have primary rights against the insurer, but, on the contrary, it does appear, as above point-

ed out, that there is to be no primary liability to injured parties. In Van Derhoof v. Chambon, 121 Cal. App. 118, 8 P.(2d) 925, 930, the court said: "Nowhere in the policy is there any express contract of direct liability to third persons. An intent to make an obligation inure to the benefit of a third party must clearly appear in the contract, and if there is any doubt about it, it should be construed against such intent." Leon v. Gulf Production Company (Tex. Civ. App.) 35 S.W. (2d) 1101; Hoffer Oil Corp. v. Hughes (Tex. Civ. App.) 16 S.W.(2d) 901; Miles v. Briggs (Tex. Civ. App.) 18 S.W.(2d) 850; Pennington v. Bevering (Tex. Com. App.) 17 S.W.(2d) 772; Southern Travelers' Ass'n v. Wright (Tex. Com. App.) 34 S.W.(2d) 823; Blair v. Bird (Tex. Civ. App.) 20 S.W.(2d) 843; Sweetwater, etc., Ass'n v. Allison (Tex. Civ. App.) 22 S.W.(2d) 1107.

The only remaining question is, Did the Legislature in passing section 13, art. 911b, Vernon's Annotated Statutes, intend that injured parties should have a right to join insurance companies in suits against truck lines for damages? Article 911b, dealing with truck lines, was passed by the Forty-First Legislature in 1929 (chapter 314). Article 911a, dealing with bus companies, was passed by the Fortieth Legislature in 1927 (chapter 270). The two articles are almost identical. It is a reasonable deduction that article 911b was largely copied from article 911a. When article 911a (then House Bill No. 50) was before the Senate, an amendment was adopted which read as follows: "The motor bus company and the insurance company carrying the insurance required by this Section may be sued jointly in any action for damages arising from injury to person or property through the operation of any such motor bus or motor buses."

This amendment was eliminated by a free conference committee and the bill finally passed without any such provision. Shall we presume that the Legislature intended that which it eliminated from the bill?

It is clear that neither from the face of the policy nor from the provisions of the statute can there be found authority which would justify the joining of the insurance company in a suit against the tort-feasor for damages.

We therefore adhere to our former holding that the plea in abatement of the insurance company should have been sustained.

It is urged that the joinder of the insurance company should be allowed, to avoid a multiplicity of suits. It has been held that, where an insurance company comes into a suit, furnishes its own attorneys to defend the suit, examines and cross-examines witnesses, argues to the jury, and participates in the trial as fully as if it were a party,

after the plaintiff has secured a favorable verdict from the jury, he may by motion in the original suit have judgment over and against the insurance company, as the law treats as parties all real parties to the litigation, whether technically parties or not. In other words, by participating in the proceedings, one is estopped by the judgment as to any question actually litigated and decided therein. Haines v. West, 101 Tex. 226, 105 S. W. 1118, 130 Am. St. Rep. 839; 15 R. C. L. §§ 481, 483. Thus it is not necessary to name the insurance company in the original suit to avoid a multiplicity of suits.

The question is raised as to what injury will result if the insurance company is joined. In Bergstein v. Popkin, 202 Wis. 625, 233 N. W. 572, 575, the court said: "Whether or not it is an indictment of our jury system, it is a fact recognized by everyone that the purpose of making the insurance company a party defendant is to increase the award of damages made against the insured. That it has that effect, no one familiar with the trial of cases can doubt."

We have been asked to certify the questions herein to the Supreme Court, but, as a writ of error will lie to the Supreme Court in this case, we have declined to certify as requested. Magill v. Brown, 20 Tex. Civ. App. 662, 50 S. W. 143, 642; Marnett Oil & Gas Co. v. Munsey (Tex. Civ. App.) 232 S. W. 867.

Appellee's motion for a rehearing is overruled.