COMMERCIAL CASUALTY INSURANCE COMPANY *v.* LEONARD.

4-7958      196 S. W. 2d 919

Opinion delivered October 28, 1946.

*Buzbee, Harrison & Wright* and *Wayne Upton,* for appellant.

*Caudle & White,* for appellee.

GRIFFIN SMITH, Chief Justice. Joint liability of $30,250 was adjudged against Missouri Pacific Transportation Company and Mrs. John Leonard. Commercial Casualty Insurance Company carried the bus company's risk and reimbursed its client to the extent of $32,372.04, inclusive of interest and cost. The appeal is cited as *Missouri Pacific Transportation Company* v. *Simon,* 199 Ark. 289, 135 S. W. 2d 336.

Mrs. Leonard was indemnified by Hardware Mutual Insurance Company, but refused to participate in payment of the judgments. Commercial Casualty sued Mrs. Leonard and Mutual, alleging discharge of its contractual liability and asking that judgment be rendered against Mutual for $16,186.02—half of the amount expended. To a complaint in which it was urged that contribution generally lies among joint tortfeasors who act negligently, but innocently, the court sustained Mutual's demurrer.

Appellant, while admitting there have been no Arkansas cases sustaining its contention, thinks language in decisions ordinarily construed as supporting the settled doctrine that such contribution cannot be had, was merely expressions of the opinion-writers on a phase not germane to a determination of the issue involved. For example, in *Criner* v. *Brewer,* 13 Ark. 225, Chief Justice Watkins said, " . . . nor does the law recognize any contribution among tortfeasors." It is insisted that the statement was a gratuity because contribution was not involved. But there is more to the opinion than has been quoted by appellant, and the declaration was not an impetuous use of the pen; but, rather, it was the court's view of the law.[1]

---

[1] Said Chief Justice Watkins, speaking for the court: "In civil suits for trespass, the object is compensation to the party enjoined. Where the trespass is joint, the plaintiff can have but one satisfaction for the injury. In contemplation of law, all the trespassers are equally liable for such damage as the plaintiff has sustained, and though the plaintiff may sue all, or as many of them either jointly or severally, as he may elect, there can be no apportionment of the damages among them, according as each may have participated in a greater or less degree in the commission of the injury; nor does the law recognize any contribution among joint tortfeasors. Each defendant is guilty or not guilty of the whole trespass, and whether the defendant[s] be sued jointly or severally, it is the duty of the jury to award damages against all or each found guilty for the whole injury which the plaintiff has sustained by the trespass complained of."

In harmony with *Criner* v. *Brewer* is *McCulla* v. *Brown,* 178 Ark. 1011, 13 S. W. 2d 32. See *Berryman* v. *Cudahy Packing Co.,* 191 Ark. 533, 87 S. W. 2d 21. *Nettles* v. *Alexander,* 169 Ark. 380, 275 S. W. 708, is cited to emphasize appellant's argument that in recent years the Supreme Court has declined to pass directly on the question in cases not involving willful conduct or a violation of law.

In the Nettles appeal these sentences appear: "It may be said that counsel have cited cases of the highest authority sustaining their position [that one tortfeasor may enforce contribution from another similarly situated]. We do not review these cases, nor do we decide whether they should be followed by us, for the reason that [failure to make a corporation report had by legislative amendment been made criminal]. In other words, [Nettles'] cause of action is predicated upon a violation of the criminal laws of the state, and his right of contribution must fail on that account."

In *Hobbs* v. *Hurley,* 117 Me. 449, 104 A. 815, the court said : "As between 'joint feasors' in *pari delicto,* which means persons who by concert of action intentionally commit the wrong complained of, there is no right of contribution. Contribution may be enforced between joint tortfeasors not intentional and willful wrongdoers, but such only by legal inference of law." See *Ellis* v. *Chicago & N. Y. Ry. Co., et al.,* 167 Wis. 392, 167 N. W. 1048 (1918), and cases there mentioned.

It cannot be said that the wrong a jury found Mrs. Leonard had committed was intentional. On the contrary, there was evidence from which there could have been a holding in her favor, and for the purpose of this opinion it may be assumed she was not a purposeful tortfeasor. Still, we are met with a rule that has been accepted since Criner and Brewer litigated in 1853; and not until 1941 was there a recognition of the obligation it is here sought to impose, although much may be said for appellant's position when it is viewed from the standpoint of abstract equity.

The collision resulting in judgments obligating Commercial Casualty occurred in 1938. Following trial in March, and appeal, this court's opinion was delivered November 27, 1939.

Act 315 of 1941 was approved March 26. It is entitled, "An Act concerning contribution among tortfeasors, release of tortfeasors, procedure enabling recovery of contribution, and making uniform the law with reference thereto." Subsection 1 of § 2 reads: "The right of contribution exists among joint tortfeasors."

There is comment in *Schultz* v. *Young*, 205 Ark. 533, 169 S. W. 2d 648, regarding purposes of the legislation. It is there stated that the measure was prepared by National Conference of Commissioners on Uniform State Laws. The late J. S. Waterman, then dean of University of Arkansas Law School, referred to the act and copied construction of some of the provisions, made by the commission. See Bulletin for October 15, 1941, p. 15 *et seq.*[2]

Whatever may be said in respect of the equities between carriers of liability where joint tortfeasors are involved—and certainly argument in favor of contribution is not without merit in those cases where the damage was occasioned unintentionally and no law was violated—it appears to have been settled prior to 1941 that contribution did not exist. This situation was seemingly recognized by the General Assembly; but, since the transaction now before us occurred prior to the enactment, terms of that measure are not retroactive and cannot avail here.

If it be conceded that in an appropriate case justice, acting through a court of equity, would have the power

---

[2] Attention should be called to the fact that the Arkansas General Assembly, in adopting the proposed act, made certain modifications. An added provision is that "Nothing in this act shall be construed to affect the several joint tortfeasors' common law liability to have judgment recovered and payment made from them individually by the injured person for the whole injury." Uniform Laws Annotated, v. 9, Miscellaneous Act, p. 164. Again, at page 168, it is shown that Arkansas added another paragraph providing that failure to serve third parties properly shall not delay prosecution of proceedings between original parties or impair original defendants' right of contribution. Sec. 7 (6), Act 315 of 1941.

to prevent one from being unjustly enriched at the expense of another, (consider "Contribution and Indemnity Between Joint Tortfeasors," by Robert A. Leflar, 81 University of Pennsylvania Law Review, p. 130)[3] the question arises whether appellant has brought itself within the terms of Act 196, approved March 23, 1927.[4]

We are cited to *Home Insurance Company* v. *Lack,* 196 Ark. 888, 120 S. W. 2d 355. "Generally," says the opinion, "any person who, pursuant to a legal obligation to do so, has paid even indirectly for a loss or injury resulting from the wrong or default of another, will be subrogated to the rights of the creditor or injured person against the wrongdoer."

When it adopted the 1927 act heretofore mentioned, the General Assembly undertook to safeguard rights of persons who were injured through the tortious conduct of another. But there are certain limitations. Even between the injured plaintiff and the defendant's insurance carrier a direct action does not lie "until after an execution [against the tortfeasor] is returned unsatisfied." This rule was announced in *Universal Automobile Insurance Co.* v. *Denton,* 185 Ark. 899, 50 S. W. 2d 592. There is the emphatic language: "We have a policy conforming to [Act 196 of 1927] which created a cause of action which would not otherwise exist, and the cause of action thus created can only be maintained under conditions specified, which are that, upon an execution being returned unsatisfied, the plaintiff in the judgment may maintain an action against the insurer for the amount of the damage not exceeding the amount of the policy."[5]

[3] Prof. Leflar is now dean of the School of Law, University of Arkansas.

[4] The act is printed twice in Pope's Digest, once as § 7774, and again as § 8007. (The matter appearing in small type on page 667 of the printed Acts of 1927, "§§ 1, 2, 3," was inserted by the compilers who prepared the acts for publication, and is not in the act proper).

[5] In *Standard Surety & Casualty Co. of New York* v. *Jackson,* 188 Ark. 724, Act 196 appears to have been erroneously cited as Act 116. It is correctly listed in the Southwestern Reporter, v. 67 2d, p. 585. Compare *National Casualty Co.* v. *Blackford,* 200 Ark. 847, 141 S. W. 2d 54.

The complaint's allegation regarding liability is that Commercial Casualty had discharged the entire judgment; that Mrs. Leonard was insured by Mutual, and that she had "failed and refused to pay" any part of the obligation. It is further said that Mutual agreed to indemnify Mrs. Leonard "from liability imposed by law" arising out of injuries received by the public. There is no claim that an execution had been issued, or that legal recourse against Mrs. Leonard had been futile—only that she "failed and refused to pay." This is not sufficient under Act 196 and the decisions construing it.

In discussing Act 196 we do not mean to say that appellant rested its right of recovery on that law. On the contrary, the theory was equitable contribution, irrespective of statutes. The failure to allege that Mrs. Leonard was insolvent does not control the issue, because in any event we would feel that the law, as construed from 1853 to 1927, should be reasserted.

Affirmed.